751 So.2d 56 (1999)
Robin Mynnon McDONALD, Appellant,
v.
STATE of Florida, Appellee.
No. 97-00239.
District Court of Appeal of Florida, Second District.
March 24, 1999.
Rehearing Denied January 3, 2000.
*57 Brian J. Donerly, Tampa, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Dale E. Tarpley, Assistant Attorney General, Tampa, for Appellee.
*58 NORTHCUTT, Judge.
Robin McDonald challenges her sentences for one count of delivery of cocaine and one count of possession of cocaine. She argues that her sentences were vindictive, and that the sentence on the possession charge contravened the sentencing guideline law. McDonald is correct on the first point, thus mooting the second one. We reverse and remand for resentencing.
McDonald's first contention is premised on her rejection of a plea offer by the State just before the start of her trial. At that time the State was willing to accept a sentence of 42 months' imprisonment as a habitual felony offender in exchange for guilty pleas. The trial judge ascertained that if the case proceeded to trial the State intended to prove that undercover police officers had purchased a single rock of crack cocaine from McDonald after recording the serial numbers on the buy money, and that they had recovered the money from McDonald after her arrest. The State also advised that it could prove McDonald's qualification as a habitual felony offender, and that, so classified, McDonald faced a possible sentence of 30 years. The judge addressed McDonald directly:
THE COURT: Okay. Ms. McDonald, you have heard the offer from the State. You are rejecting that offer, ma'am?
THE DEFENDANT: Yes, sir.
THE COURT: I'm sorry?
THE DEFENDANT: No, sir, I don't want it. I didn't do it.
THE COURT: You know that the police officers are going to come in here and testify that you did?
THE DEFENDANT: Yes, sir.
THE COURT: They're going to testify they took the money from you with the serial numbers; do you understand that?
THE DEFENDANT: They didn't get the money.
THE COURT: Well, all right. Do you understand, ma'am, that if you're convicted, if the jury finds you guilty, that you are potentially, you are facing 30 years in Florida State Prison; do you understand that?
THE DEFENDANT: Yes, sir.
In fact, testimony in the State's case-in-chief revealed that the arresting officers never recovered the buy money. At a recess during the State's case, the parties reached a plea agreement. McDonald signed the forms necessary to change her pleas to guilty on all counts in exchange for a total 48-month habitual felony offender sentence. But when the trial judge was informed of this, he summarily rejected the deal without explanation. In due course the jury found McDonald guilty. After reviewing a presentence investigation report, the judge imposed concurrent maximum sentences: 30 years as a habitual felony offender on the delivery count, and 60 months for the possession.
When considering McDonald's complaint that the sentences were vindictive, we are mindful that a defendant who is convicted after rejecting a plea offer has no right to insist on being sentenced in accordance with the offer. See Mitchell v. State, 521 So.2d 185 (Fla. 4th DCA 1988). On the other hand, when a court is exercising its discretion to devise punishment for a convicted defendant, the law forbids it to take into account the defendant's refusal to accept a plea offer. A defendant's fear of retribution in sentencing cannot be permitted to chill the exercise of her Fifth Amendment privilege against self-incrimination, or her Sixth Amendment right to have her guilt or innocence determined by a jury. See City of Daytona Beach v. Del Percio, 476 So.2d 197 (Fla.1985); United States v. Stockwell, 472 F.2d 1186 (9th Cir.1973). So important is this principle that its violation is fundamental error, cognizable on appeal even in the absence of a timely objection in the trial court. See Mitchell, 521 So.2d at 187.
Standing alone, the imposition of a longer sentence than the one contemplated in the failed plea negotiation does not *59 establish vindictiveness. Rather, ordinarily it is the defendant's burden to prove actual vindictiveness on the part of the sentencing judge. See Stephney v. State, 564 So.2d 1246 (Fla. 3d DCA 1990). But when the judge has been involved in the plea negotiation and then later imposes a harsher sentence, the sentence is presumed to be vindictive. This presumption may be overcome only if the record affirmatively demonstrates that the defendant's insistence on a trial was given no consideration in the sentencing. Id.
Here, the State contends that the trial judge did not participate in the plea negotiation, pointing out that the 42-month offer was made by the prosecutor. But given the purpose of the ruleto ensure that defendants are not intimidated by fear of judicial reprisal when weighing whether to waive their constitutional rights-the source of the plea offer was not as important as the fact that the judge advocated it. The transcript of the pre-trial colloquy plainly reflects the judge's attempt to convince McDonald to accept the State's proposal by warning her of the potential consequences of a guilty verdict. By virtue of that judicial involvement in the plea negotiation, the harsher sentences imposed after McDonald's conviction are presumptively vindictive. They must be reversed unless the record affirmatively shows that McDonald's refusal to accept the plea offer did not influence the judge's sentencing decision.
We have carefully studied the record, including the transcript of the sentencing hearing. The record does not affirmatively show that the trial judge actually meant to punish McDonald for refusing to plead and going to trial. But that is not the test. When, as here, "vindictiveness" in sentencing is presumed, it is "simply a term of art which expresses the legal effect of a given objective course of action, and does not imply any personal or subjective animosity between the court [ ... ] and the defendant." Frazier v. State, 467 So.2d 447, 449 n. 4 (Fla. 3d DCA 1985). See also Stockwell, 472 F.2d at 1187 ("While we do not believe that the experienced trial judge actually punished the defendant for standing trial, the record leaves unrebutted the inference drawn by the defendant."). Thus, the question here is whether the record affirmatively demonstrates that McDonald's election did not influence the judge's exercise of discretion when fashioning her sentences.
We conclude that the record does not refute the presumption of vindictiveness. It is true that at the sentencing hearing the trial judge knew more about McDonald's prior convictions than he did when he was willing to impose a 42-month sentence prior to trial. And, certainly, criminal offenses are by definition serious matters. But it is also true that the judge always had been aware that McDonald had prior felony convictions, and that they qualified her as a habitual felony offender. Moreover, McDonald's prior record disclosed that her place in the criminal milieu was a relatively minor one; she was a run-of-the-mill street dealer of small quantities of contraband. In this regard it is telling that, had the judge exercised his discretion to forgo sentencing McDonald as a habitual felony offender, her guidelines scoresheet would not even have mandated incarceration. It is also notable that by the time the judge imposed sentence he had learned some other things about McDonald which in his discretion reasonably might have caused him to temper her punishment: she was addicted to both drugs and alcohol, and she was manic depressive. The record simply does not undermine the presumption that the extreme disparity between the 3½-year sentence offered to McDonald prior to trial and the 30-year sentence imposed after her conviction was, at least in part, the product of judicial vindictiveness.
Having determined that McDonald's sentences must be reversed, we have puzzled over the proper remedy. *60 Case authority offers little guidance on the question, suggesting that appropriate remedies must be fashioned case by case. In Fraley v. State, 426 So.2d 983 (Fla. 3d DCA 1983), the Third District remanded for the trial court "to make record findings supportive of the more severe sentence." We reject that approach for the rather obvious reason that it would be hollow justice to accept a defendant's argument that the trial judge was vindictive when sentencing her, only to then return the defendant to the same judge for a declaration that the sentence will stand. In Stephney v. State, 564 So.2d 1246, and again in Jackson v. State, 613 So.2d 610 (Fla. 3d DCA 1993), the Third District remanded with instructions to sentence the defendant within the recommended sentencing guideline range rather than the permitted range. But that option is not available in this case because the plea offers McDonald rejected, as well as the one she accepted during her trial, all contemplated that she would be sentenced as a habitual felony offender, to which the sentencing guidelines do not apply.
In yet another vindictive sentencing case, the Third District reversed and remanded with instructions to impose a specific sentence. See Beckles v. State, 577 So.2d 726 (Fla. 3d DCA 1991). The court's opinion recited no facts, and gave no explanation for its choice of remedy. We can only assume that the circumstances peculiar to that case suggested that the imposition of a specific sentence would be the most just result.
Here, McDonald argues for a sentence of 42 months' imprisonment as a habitual felony offender, the same punishment that was offered to her prior to trial. But she rejected that offer and, as we have stated, she has no right to insist upon it at this point. We conclude that under the specific circumstances of this case, McDonald should be sentenced to 48 months' imprisonment as a habitual felony offender. That was the punishment contemplated when she and the State reached a plea agreement during her trial. At that time, the State was aware of McDonald's history of convictions. The trial judge had discretion not to approve that agreement. But his summary rejection of the deal so recently after urging McDonald to accept a more lenient punishment is inexplicable other than as impermissible retribution for her refusal to do so. Under these circumstances, we hold that a sentence in accordance with the mid-trial plea agreement is the appropriate remedy in this case.
We reverse McDonald's sentences and remand with directions to sentence her to a total of 48 months' imprisonment as a habitual felony offender. She need not be present at the resentencing.
WHATLEY, A.C.J., Concurs.
GREEN, J., Concurs specially.
GREEN, J., Concurring.
Our decision is based on what I see as a close issue. The initial portion of the brief pretrial exchange was as follows:
THE COURT: Let's go on the record on Ms. McDonald. Was there an offer made in this case?
MR. PEREZ: Yes, I madewe made several offers. The latest offer would be forty-two months Florida State Prison, three and a half years.
THE COURT: Three and a half years['] Florida State Prison?
MR. PEREZ: Yes, sir.
MR. LOPEZ: That was, I believe, as a habitual felony offender.
MR. PEREZ: As a habitual felony offender.
THE COURT: Has she been noticed as a habitual felony offender?
MR. LOPEZ: She has been noticed.
THE COURT; What is her exposure as a habitual felony offender?
MR. PEREZ: Thirty years.
THE COURT: Thirty years?
MR. LOPEZ: I went through that with my client and I explained to her *61 that if she was found guilty that potentially she could be facing a maximum of thirty years in Florida State Prison.
It is significant that Robin McDonald's attorney was the first to raise the specter of the possibility of a thirty year habitual offender sentence. The trial judge simply went too far in reenforcing that admonition, although there is no record indication that vindictiveness played a part in the imposition of the sentence. It is not significant that the trial judge declined to accept the conditioned plea during trial. The sentence imposed is out of proportion with either the instant charges or McDonald's criminal history.