816 So.2d 1155 (2002)
Tony PRADO, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D00-3055.
District Court of Appeal of Florida, Third District.
May 8, 2002.
*1156 Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Roberta G. Mandel, Assistant Attorney General, for appellee.
Before JORGENSON, SHEVIN and SORONDO, JJ.
SHEVIN, Judge.
Tony Prado appeals the sentence imposed following a conviction for sale of cocaine within 1000 feet of a school. We reverse and remand for resentencing.
An undercover Miami Beach Police detective had been trying to purchase cocaine from a suspect. After over two hours of negotiating with the suspect, the suspect walked with the detective several blocks to find Prado. The suspect spoke with Prado, Prado gave the suspect an item that was later revealed to be a 3/10 gram rock of cocaine; the suspect handed the rock to the detective. The detective paid the suspect, who turned the money over to Prado. Prado was arrested at a nearby supermarket holding the money. No other drugs were found on Prado's person. The transaction occurred about 450 feet from an elementary school on a Saturday afternoon.
Prado's first trial ended with a hung jury as five persons voted not guilty and one person voted guilty. At the beginning of the second trial, the court initiated a lengthy exchange with Prado regarding the benefits of accepting the state's four-year prison plea offer, in lieu of proceeding to trial. In the colloquy, which spans the first eleven pages in the trial transcript, the court emphasized the merits of the plea offer, the uncertainty of possible trial outcomes, and the possibility of receiving a harsher sentence upon conviction. Prado declined the plea offer and elected to proceed to trial.
The second jury found Prado guilty as charged. Thereafter, the court sentenced Prado to forty years in prison. Prado appeals the sentence, asserting that there is no reason for the exponentially longer sentence other than judicial vindictiveness. Based on the record before us, we agree.
Although court participation in plea bargaining is permissible, State v. Warner, 762 So.2d 507 (Fla.2000), "judicial involvement must be limited `to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice.'" Id., at 513 (quoting People v. Cobbs, 443 Mich. 276, 505 N.W.2d 208 (1993)). "To avoid the potential for coercion, a judge must neither state nor imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant's right to trial." Id. at 514(emphasis *1157 added). The transcript of the colloquy in this case demonstrates that the court went beyond the admonitions in Warner. Instead, the transcript demonstrates the court's zealous advocacy for the benefits of the plea.
"[W]hen the trial judge is involved with the plea bargaining, and a harsher sentence follows the breakdown in negotiations, the record must show that no improper weight was given the failure to plead guilty." Stephney v. State, 564 So.2d 1246, 1248 (Fla. 3d DCA 1990). Here, nothing in the record "affirmatively demonstrates that the defendant's insistence on a trial was given no consideration in the sentencing." McDonald v. State, 751 So.2d 56, 59 (Fla. 2d DCA 1999)(citing Stephney). Therefore, the sentence must be reversed. Byrd v. State, 794 So.2d 671 (Fla. 5th DCA 2001), review granted, No. SC01-2333, 817 So.2d 850 (Fla. April 12, 2002); King v. State, 751 So.2d 691 (Fla. 2d DCA 2000); Jones v. State, 750 So.2d 709 (Fla. 2d DCA 2000). The transcript reveals no other reason for imposition of the harsh sentence, a tenfold increase from the 4 year plea offer; the court's comments on their face support the presumption of judicial vindictiveness. Nothing in the record rebuts this presumption. The only possible conclusion is that the harsher sentence was imposed because Prado failed to accept the favorable plea bargain championed by the court prior to trial.
Therefore, the sentence is reversed and the cause is remanded to the trial court to sentence the defendant to four years in prison in accordance with its prior plea offer.
Sentence reversed and remanded.
JORGENSON, J., concurs.
SORONDO, J. (concurring).
I agree with the majority opinion, and write separately to address the state's argument that the error at issue was not properly preserved for appellate review, and to expand on what happened below.

PRESERVATION ISSUE
The state argues that the defendant has not preserved the claim of vindictive sentencing as there was no contemporaneous objection made at the time sentence was imposed, or thereafter by way of Florida Rule of Criminal Procedure, 3.800(b), and that the alleged error is not fundamental. Acknowledging that this type of error has previously been held to be fundamental, see McDonald v. State, 751 So.2d 56 (Fla. 2d DCA 1999); Mitchell v. State, 521 So.2d 185 (Fla. 4th DCA 1988), the state suggests that Mitchell, the case upon which McDonald relies, was decided prior to the enactment of the Criminal Appeals Reform Acta fact not addressed by McDonald. I reject the suggestion that the Criminal Appeal Reform Act has affected Mitchell's holding, and strongly believe that vindictive sentencing is fundamental error.
In Maddox v. State, 760 So.2d 89, 94 (Fla.2000), the Florida Supreme Court concluded that "nothing in the [Criminal Appeals Reform] Act or our prior jurisprudence prevents appellate courts from addressing certain unpreserved sentencing errors on direct appeal." Although the court went on to say that this was a very narrow class of errors, I believe the error in this case falls within this class. The reason why vindictive sentencing is forbidden is that it undermines the critical right not to plead guilty guaranteed by the United States Constitution's Fifth Amendment, and the right to trial by jury guaranteed by the Sixth Amendment. Any judicial action that needlessly discourages the invocation of these rights is unconstitutional. *1158 See United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); see also Gillman v. State, 373 So.2d 935 (Fla. 2d DCA 1979). The right to a trial by jury would be meaningless if the price to be paid for an adverse verdict is the automatic imposition of the maximum penalty, regardless of the seriousness of the facts of the particular case, the accused's age, level of culpability, prior criminal record or absence thereof, accomplishments and other mitigating factors that are always relevant to a determination of an appropriate sentence. Accordingly, I conclude that vindictive sentencing is fundamental error and therefore reviewable in this appeal.

VINDICTIVE SENTENCING ISSUE[1]
Like Byrd v. State, 794 So.2d 671 (Fla. 5th DCA 2001), review granted 817 So.2d 850 (Fla.2002) this case demonstrates the dangers of judicial participation in the plea bargaining process, and serves to remind the trial judiciary of the limitations imposed on judicial plea bargaining by the Florida Supreme Court in State v. Warner, 762 So.2d 507 (Fla.2000).
In Warner, the Supreme Court adopted the Michigan model for judicial plea bargaining, and, quoting from the Michigan Supreme Court's decision in People v. Cobbs, 443 Mich. 276, 505 N.W.2d 208 (1993), stated that the question for the plea bargaining judge's consideration is: "`Knowing what you know today, what do you think the sentence would be if the defendant pled guilty, as charged?'" Warner, 762 So.2d at 514. The court went on to warn that "[t]o avoid the potential for coercion, a judge must neither state nor imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant's right to trial."[2]Id. That said, I proceed to discuss the specific issue presented by this appeal.
In response to defendant's claim that the sentence in this case was vindictive, the state first rejects the premise that the trial court became involved in the plea bargaining process. It argues that throughout the discussions at issue the *1159 "trial judge served only as a neutral arbitrator." I disagree. In order to understand what happened below, it is essential to examine the transcript of proceedings. As pertinent to this discussion, the exchange between the judge and the defendant follows:[3]
COURT: All right. So the situation is this, the State filed a charge against you of unlawful sale or delivery of cocaine near a school property and the situation is this.
They tell me that if you're found guilty in this case, since it's a first degree felony, that they also believe they can prove that you're what they call a habitual felony offender meaning you have been convicted of two or more felonies in the past they will try to use against you to make a difference in the range of sentencing in this case.
The bottom line is if you are found guilty of this charge and they prove that you're a habitual felony offender, the judge makes that decision, not the jury.
Then they will be seeking to put you in State prison for forty years with a three year minimum mandatory. That's what they would be seeking. Of course, there are no guarantees as to what I would do, but that's what they would be asking for and that's what your maximum exposure would be.
You could conceivably get forty years State prison with a three year minimum mandatory, as I understand from Mr. Sisselman and Ms. Calli, your attorneys.
The State has made a plea offer at the last time and they made a plea offer againand correct me if I misstate ita plea offer of four-and-a-half years in State prison.
COURT: Four or four-and-a-half?
DEFENSE COUNSEL: Four years with a three year minimum mandatory as an habitual. I assume that offer is still open.
STATE: That is correct, Your Honor.
COURT: So they're offering you four years State prison with a three year minimum mandatory as a habitual felony offender. You have been in custody, as far as I can tell here, since January of the year two thousand, almost six months. And whatever time that you have already spent in jail will go toward that minimum mandatory time and also towards the four years total.
I guess the bottom line is and you do the math is that even you if you did every single day of the minimum mandatory or every single day of the four years, which nobody actually does every single day, there would be a reasonable period of time where you could expect to be released from State prison and go about your business.
If you lose the case, however, and if you were to be sentenced to forty years or twenty-five or thirty or whatever it might be, now a days people are doing eighty to eighty-five percent of their sentence, so you don't have to be a genius in math, and I'm certainly not going to figure out the difference of what you have to risk if you lose.

*1160 I don't know what the jury decided on the last case or why they couldn't come up with a decision, but it's a new day with a new jury and jurors do what they want. They can find people guilty or not and they never have to tell us why. It's a crap shoot.
DEFENSE COUNSEL: The previous offer was four years State prison.
* * * *
COURT: Listen, Mr. Prado, you're talking to the wrong guy. See, I don't make the decision. I don't make the decision.
DEFENDANT: But they make me guilty. You have to give me the year only. You have to check my case and you can see I smoking crack. I don't think you can give me forty years for this.

COURT: Don't be so sure.

DEFENDANT: Okay.
COURT: Nobody can be sure of anything in life. I can't tell you what the sentence would be, the same way I can't tell you what this jury would do given the facts that are presented in this case.
For all I know, they may say Tony Prado is not guilty, let him go home, and then you get to go home. But if they say Tony Prado is guilty, then you don't get to go home so fast and it may turn out that you get to stay in State prison for ten years or twenty or thirty or maybe even forty years.

So they're offering you now an opportunity to get out from the possibility of being sentenced to that high amount by cutting your losses, pleading no contest. No contest means you're not admitting your guilt, you're just not contesting the charge for reasons that are important to you.
And listen, I don't know what's important to you. You don't have to plead guilty. You don't have to say I'm guilty if you plead no contest.
You're basically saying I'm not contesting the charges because I don't want to take a chance on the jury finding me guilty and maybe the judge sentencing me to forty years State prison.
If you feel you're a gambler and a player and want to take a chance, knock yourself out. We'll give you a trial. And once the dice are thrown
(Emphasis added).
The defendant then went on to complain about the state's offer. He told the judge that he was only a drug user, and as such, he did not deserve a minimum mandatory sentence. The court responded:
COURT: They're in a bind. They can't drop below that because the statute says they can't. Their office won't let them. They can't. We're not dealing with wishes here. We're dealing with the reality of life and the reality of life is this is the only offer they can make you.
So it's a question of whether or not you want to take a chance. If you want to take the chance and hope for the best, hey, no problem. If you want to cut your losses, get the credit for the time served, start doing it and get it behind you, then let's do that.
I can't make the decision for you. I mean, I understand what you're saying. That's why you would be allowed to plead no contest. You don't have to plead guilty, if you feel you're not guilty. But then you have to think about what's good for Tony Prado, you know.

Do you do the three year minimum mandatory or however many years they ask of you. They may not ask you-wait a second. Let me talk. I let you talk. They may not ask you to do everyday of it. But even if they made you do every single day of the three *1161 years, which is better than doing everyday of three years or four years or everyday of maybe thirty or forty years where you never see the light of day, I can't answer that for you.

You know, it's a gamble when you go in front of this jury of six people. It's a new jury. They can do anything they want and they can find you guilty just because they don't like the way you look. I don't know.
DEFENDANT: Yeah. Different jury, but similar evidence.
COURT: But you know, every jury looks at the evidence differently. That jury looked at it one way and this jury can look at it another way. I'm not gambling with my life. I get to go home. Your lawyer gets to go home. You're the one you have to worry about.
[DEFENSE COUNSEL]: I want to make the record clear, I have told Tony and most defendants in this situation they should assume if they lose they're going to get the maximum just as to help them weigh out the consequences. I don't know what's going to happen, but I have told him he can get forty years.
COURT: Listen. You can't make the decision for him and I can't guarantee what he would get. But if he gets found guilty and if they found him to be a habitual felony offender and if the judge does give you forty years, don't come back and say, hey, what happened to that three years? That was looking pretty good.

Now is the time to make the decision. I can't make it for you.
DEFENDANT: I don't believe you give me forty years. I don't believe it.
* * * *
DEFENDANT: Why then don't give me three?
COURT: I'll tell you why. This is not the Bloomingdales bargain basement. They're offering you that plea. If you want to take it, fine.
If you want to gamble and go to trial, let's do it. So tell me what you want to do. They're not changing it.
DEFENDANT: I say you give me three, I take three.
(Emphasis added).
The court then proceeded to try the case. The jury convicted the defendant as charged. At sentencing, the state again advised the court that the defendant qualified for sentencing as a habitual offender. It then asked the court to impose a sentence of forty years as a habitual offender.
The court then heard a plea for mercy from defense counsel, and proceeded to sentencing:
COURT: The Court had an opportunity to listen to the evidence, in this case, and the jury made a determination on August 9th in the year 2000 that defendant was in fact guilty of unlawful sale or delivery of cocaine on or near school property.
* * * *
When we were here, prior to the trial starting, the prosecution, if I recall correctly offered the defendant four years in state prison with a three year minimum mandatory which he turned down. At the time, the State and the defense were under the impression that the statutory maximum for this crime was 40 years in state prison. And then it turned out that prior to the jury coming down, the prosecution determined that the maximum statutory was life in state prison. Not withstanding that, the offer was made again and rejected by the defendant. And, of course, the defendant had an opportunity to have competent *1162 counsel advise him on whether or not to take that plea and for whatever reason chose not to. And, of course, that's his choice. Going to trial is something that we do here but the consequences, of course, are if you lose, you might lose big.

In this particular case, the defendant made an enlightened choice that was not a particularly good one. He turned down the fairly reasonable plea. On the other hand, I don't know if the defendant qualified for the maximum statutory penalty in this case. Life in prison we probably should reserve for violent felonies where people are physically injured.
* * * *
And, he made another life choice when he said to me you will not give me 40 years in state prison. He was wrong about going to trial; he was wrong about that sentence because that's exactly what he's going to get.

(Emphasis added).
As tedious as such an extensive recitation of the transcript below may make the reading of this opinion, I believe it is essential to convey an accurate perspective of what happened in the trial court. Although the quoted portions of the transcript above do not represent the entire colloquy between the trial judge, the lawyers and the defendant, they do include the subjects that are of concern.
Of the cases cited by Judge Shevin in his majority opinion, I take a moment to discuss McDonald v. State, 751 So.2d 56 (Fla. 2d DCA 1999). There, the state offered the defendant a plea bargain to forty-two months imprisonment as a habitual felony offender. The trial court conducted the following colloquy with the defendant:
THE COURT: Okay. Ms. McDonald, you have heard the offer from the State. You are rejecting that offer ma'am?
THE DEFENDANT: Yes, sir.
THE COURT: I'm sorry.
THE DEFENDANT: No, sir, I don't want it. I didn't do it.
THE COURT: You know that the police officers are going to come in here and testify that you did?
THE DEFENDANT: Yes, sir.
THE COURT: They're going to testify they took the money from you with the serial numbers; do you understand that?
THE DEFENDANT: They didn't get the money.
THE COURT: Well, all right. Do you understand, ma'am, that if you're convicted, if the jury finds you guilty, that you are potentially, you are facing 30 years in Florida State Prison; do you understand that?
THE DEFENDANT: Yes, sir.
During the trial that followed, the evidence established that the officers, in fact, never recovered the money as the defendant had advised the court. Nevertheless, at a recess during the state's case-in-chief, the parties negotiated a plea agreement to forty-eight months in state prison as a habitual felony offender. When the judge was advised of this development, he summarily refused to accept the agreement without explanation. The jury convicted the defendant, and the judge sentenced her to thirty years as a habitual felony offender.
The Second District Court of Appeal reversed the sentence and stated:
Standing alone, the imposition of a longer sentence than the one contemplated in the failed plea negotiation does not establish vindictiveness. Rather, ordinarily it is the defendant's burden to prove actual vindictiveness on the part *1163 of the sentencing judge. See Stephney v. State, 564 So.2d 1246 (Fla. 3d DCA 1990). But when the judge has been involved in the plea negotiation and then later imposes a harsher sentence, the sentence is presumed to be vindictive. This presumption may be overcome only if the record affirmatively demonstrates that the defendant's insistence on a trial was given no consideration in the sentencing. Id.

Id. at 58-59; see also Byrd v. State, 794 So.2d 671 (Fla. 5th DCA 2001), review granted 817 So.2d 850 (Fla.2002); Bush v. State, 785 So.2d 1238 (Fla. 4th DCA 2001); King v. State, 751 So.2d 691 (Fla. 2d DCA 2000); Gillman v. State, 373 So.2d 935 (Fla. 2d DCA 1979).
The state argues that no presumption of vindictiveness arises in the present case because the judge was not "involved" in the plea negotiations. Rather, the argument goes, the plea offer was made by the state and not by the judge, who, according to the state, served as nothing more than a neutral arbiter.[4] This argument is as unpersuasive here as it was in McDonald, where the court stated:
Here, the State contends that the trial judge did not participate in the plea negotiation, pointing out that the 42 month offer was made by the prosecutor. But given the purpose of the ruleto ensure that defendants are not intimidated by fear of judicial reprisal when weighing whether to waive their constitutional rightsthe source of the plea offer was not as important as the fact that the judge advocated it. The transcript of the pretrial colloquy plainly reflects the judge's attempt to convince McDonald to accept the State's proposal by warning her of the potential consequences of a guilty verdict. By virtue of that judicial involvement in the plea negotiation, the harsher sentences imposed after McDonald's conviction are presumptively vindictive. They must be reversed unless the record affirmatively shows that McDonald's refusal to accept the plea offer did not influence the judge's sentencing decision.
Id. at 59. (Emphasis added).
At the time of the plea discussions, the trial judge was fully aware of the two most pertinent factors relevant to sentencing in this case; first, that the defendant was charged with the crime of sale of three-tenths of a gram of cocaine within 1000 feet of a school, and, second, that the defendant was a habitual felony offender. Knowing this, the court communicated its willingness to accept the plea and encouraged the defendant to accept the state's offer.[5] The record before us is devoid of any additional facts that became known to the trial judge during or after trial that could possibly justify an ultimate sentence ten times more severe than that which the trial judge found acceptable immediately *1164 before trial, and which, even at sentencing, the judge still characterized as "fairly reasonable."
The inescapable proof that defendant was punished for going to trial is evident in the trial court's statements at sentencing. Specifically, "[g]oing to trial is something that we do here but the consequences, of course, are if you lose, you might lose big." The court further said: "And, [the defendant] made another life choice when he said to me you will not give me 40 years in state prison. He was wrong about going to trial; he was wrong about the sentence because that's exactly what he's going to get."

CONCLUSION
I emphasize that "[a] judge's preliminary evaluation of the case is not binding, since additional facts may emerge prior to sentencing which properly inform the judge's sentencing discretion." State v. Warner, 762 So.2d at 514. Accordingly, the fact that a trial judge expresses an inclination to accept a state plea offer, does not mean that he or she will be bound to impose the same sentence after hearing the trial, if the evidence raises concerns that were not perceptible from the usually abbreviated representations made to the court during the plea bargaining process. Factors such as the nature of the defendant's prior convictions, the degree of violence employed by the defendant during the commission of the crime, the sophistication with which the charged offense was committed, and/or the physical or psychological suffering endured by the victim(s), are some factors that might lead the court to increase what it originally considered to be an acceptable sentence.[6] Nevertheless, a judge who, having been advised of the details of the case and having been actively involved in an unsuccessful plea bargaining discussion, wishes to impose a post-trial sentence more severe than that contemplated by his or her plea negotiations, would be wise to explain his or her reasons for the greater sentence in order to dispel any appearance of vindictive sentencing.
In the present case, there are no identifiable factors that became known to the trial judge at sentencing that were not known during the plea discussion with the defendant. Moreover, unlike the cases cited above that have relied on a presumption of vindictiveness, the trial court's statements at time of sentencing elevate any presumption raised by the more severe sentence to an absolute certainty.
For the reasons set forth above, I concur with Judge Shevin that the sentence imposed below must be reversed.
NOTES
[1] As this Court observed in Frazier v. State, 467 So.2d 447, 449 (Fla. 3d DCA 1985), "the expression `vindictiveness' [or vindictive sentencing] is simply a term of art which expresses the legal effect of a given objective course of action, and does not imply any personal or subjective animosity between the court (or a prosecutor) and the defendant."
[2] I do not believe that Warner forbids a judge from becoming involved in a discussion wherein the accused is asked whether he is aware of the state's pending plea offer and his or her maximum exposure if convicted at trial. Indeed, I understand why trial judges go out of their way to determine whether criminal defendants have been advised of any and all plea offers prior to trial. A recurring post-conviction claim is that trial counsel was ineffective in that he or she failed to communicate a plea offer made by the state or failed to advise the defendant of his full exposure if convicted at trial. In order to address this potential problem, many trial judges have adopted the practice of asking the attorneys immediately before trial, in the defendant's presence, whether a plea offer has been extended and whether the same has been communicated to the defendant. In fact, the trial judge in the present case did just that. Immediately after calling the case and allowing counsel for the state and defense to identify themselves, the court asked defense counsel if a plea offer had been made. Defense counsel advised the court of the state's offer and correctly identified his client's maximum exposure if convicted. The judge then asked defendant: "You still don't want the four years?" The defendant responded: "No, no." This discussion, consuming no more than two pages of the transcript, accomplished the goal of establishing a record that the defendant was fully apprised of the plea offer, and the full breadth of his exposure if convicted. In my judgment, Warner does not forbid a brief inquiry on this subject.
[3] Preliminarily, I note that at the time the following exchange took place, the judge, counsel for both sides, and the defendant were under the impression that the maximum penalty defendant could receive was forty years in prison as a habitual felony offender with a three year minimum mandatory. After this colloquy, but before trial, everyone realized that the maximum penalty was life imprisonment. The defendant was advised of this before trial began.
[4] The state further argues that the fact that the judge considered but did not impose the maximum sentence of life imprisonment also serves to rebut any presumption of vindictiveness. I also reject this argument. The defendant was forty-five years old at the time of sentencing. On a forty-year sentence, he will serve thirty-four years. Although as a matter of law the sentence imposed may not be a life sentence, as a matter of fact, it is.
[5] Contrary to the admonition in Warner, in the present case, the trial judge repeated the potential maximum penalty six times during the colloquy. At one point, the defendant, incredulous that he could receive such an onerous sentence for this offense, said: "I don't think you can give me forty years for this." The judge replied: "Don't be so sure." This was the seventh time the judge alluded to the fact that the maximum penalty could (or would) be imposed after a conviction at trial. This type of judicial participation in the plea bargaining process is simply not allowed by Warner.
[6] This list of factors is by no means exhaustive. There are other circumstances where a sentence after trial may exceed the sentence discussed during the plea bargaining process. The number and variety of situations that arise in the criminal justice system where a judge may agree to a plea bargain for reasons other than the fairness of the sentence are many. The best examples are cases involving the sexual molestation of children. In such cases, the prosecution, in order to spare the child victim the ordeal of testifying publicly about horrific acts often performed by a parent, sibling or close family friend, may offer the accused a plea to a lengthy period of probation with numerous special conditions. Trial judges will often accept these agreements, not because they believe that the sentence is fair or appropriate to the crime, but out of consideration to the victim's emotional health. Where the trial judge indicates that such an agreement is acceptable, but the defendant rejects the plea, the judge would not be bound to sentence the defendant in accordance with that agreement after trial because an enhanced sentence would not be punishing the defendant for exercising his or her right to trial, but would instead represent a sentence intended solely to fit the vile and heinous nature of the crime.