ROTHENBERG, J.
(dissenting).
While I agree with my colleagues that the sentence imposed appears excessive, I cannot agree that the record supports a finding that the sentence imposed was as a result of vindictiveness. I, therefore, respectfully dissent.
In determining whether a defendant’s constitutional right to due process was violated by the imposition of an increased sentence after unsuccessful plea discussions in which the trial judge participated, the Florida Supreme Court concluded, as did this court in Charles v. State, 816 So.2d 731 (Fla. 3d DCA 2002), and Prado v. State, 816 So.2d 1155 (Fla. 3d DCA 2002), that a totality of the circumstances review is the appropriate analysis which must be employed. See Wilson v. State, 845 So.2d 142, 156 (Fla.2003). The factors which must be considered under a totality of circumstances review are (1) whether there was judicial participation in plea negotiations followed by a harsher sentence; (2) whether the trial judge initiated the plea discussions with the defendant in violation of Warner; (3) whether the trial judge, through his or her comments, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept the plea or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (4) the disparity between the plea offered and the ultimate sentence imposed; and (5) the lack of any facts in the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or a hearing. Wilson, 845 So.2d at 156.
*1048 It is only when the trial judge’s participation goes beyond what was contemplated in State v. Warner, 762 So.2d 507 (Fla.2000), or when the trial judge, by his or her comments, appears to have departed from the role of a neutral arbiter, may these actions alone give rise to a presumption of judicial vindictiveness. Wilson, 845 So.2d at 156. The Warner restrictions include the following: (1) the trial judge may not initiate the plea discussions; (2) the trial judge must neither state nor imply alternative sentencing possibilities that hinge upon future procedural choices, such as the exercise of a defendant’s right to trial; and (3) a record must be made of all plea negotiations involving the trial judge. Warner, 762 So.2d at 513-14.
The majority takes the position that a totality of the circumstances review is not required because the trial court violated the Warner restrictions. This position is premised on the majority’s conclusions that the trial court’s inquiry of the defendant regarding whether he wished to avail himself of the State’s offered plea, which the trial court noted was at the bottom of the recommended sentencing guidelines, (1) converted the State’s plea offer into a court offered plea, and (2) “can be read no other way but as an attempt to urge Wilson to take the plea offer.” Based upon these conclusions, along with the great disparity between the sentence offered and the sentence imposed, the majority makes a finding that the sentence imposed by the trial judge is presumptively vindictive. The record, however, does not support these conclusions and the majority concluded otherwise in its own opinion, thus taking totally inconsistent positions. See majority opinion p. 104.3, (“Although the trial judge here stopped short of affirmatively recommending that Wilson accept the plea offer, I believe that the judge’s statement ‘[i]t’s the bottom of the guidelines constituted judicial participation in plea negotiations.”) (emphasis added). A totality of the circumstances analysis is, therefore, required. Because the majority opinion did not perform a totality of the circumstances analysis, it is in conflict with the Florida Supreme Court’s opinion in Wilson and this court’s opinions in Charles and Prado.
I am also of the opinion that after performing a totality of the circumstances analysis, the record does not support a finding that the sentence imposed is presumptively vindictive. The record reflects that the trial court did not initiate the plea discussions, and limited its participation to determining whether or not Wilson was willing to accept the plea extended by the State. The trial court did not urge Wilson to accept the plea, nor infer or imply that he would be penalized for exercising his right to a hearing. To the contrary, the record reflects that the trial court encouraged Wilson to exercise that right.
A review of the record reveals that Wilson was on probation for masturbating in front of children. He was before the instant trial judge for a violation of his probation. The violation alleged that Wilson had been convicted in Brevard County for exposing himself. While the majority imputes knowledge of Wilson’s history with the court, there is nothing to support this finding. Contrary to the assertion in the majority opinion, this judge was not the judge who originally placed Wilson on probation and there were no discussions on the record nor any suggestion that there were any discussions held off the record regarding his prior violations. The following is the entire pre-hearing record.
[COURT]: James Wilson. Okay. We have got a trial date of 5-1 for Mr. Wilson.
[STATE]: Just so you know, I did score him out but it’s a rough number. 67 months at the bottom on the low end.
*1049 [COURT]: James Wilson. Have you spoken to Mr. Wilson? Is there anything further we can do in this case or should we just—
[DEFENSE]: I don’t think we need to hear testimony today; however, if the Court would be willing to listen to my client for a moment, he has something he would like to express to the Court about his feelings, if the Court—
[COURT]: No, I’m really — I’m only interested in listening to either a plea or testimony from the witness and I’ll decide whether or not Mr. Wilson [h]as violated his probation. If he’s willing to admit that he did I don’t know whether he did, but I’ll make that decision unless he’s already willing to acquiesce that, in fact, he did violate his probation. So, which is it? Does somebody have an answer for me? Are we ready to go to PVH or have a plea?
[DEFENSE]: I believe we have a plea
[COURT]: What’s the plea?
[DEFENSE]: 67 months
[COURT]: 67 months at the bottom of the guidelines; is that correct, state?
[STATE]: At the bottom of the guidelines—
[COURT]: Is Mr. Wilson willing to admit a violation of probation?
[STATE]: And he would still be on probation.
[COURT]: So that would be revoking his probation. Ready to go, Mr. Wilson? Is this what you want to do or not?
[WILSON]: I want to — if I can say one thing, Your Honor? You have a sign, “We who labor here seek only the truth.” If I give you the truth — my truth is that I’m not guilty of doing what they say.
[COURT]: Fine. I have witnesses. I’ll take testimony and I’ll decide. If you are right and then if I agree with you, you walk out a free man. How is that? Let’s go. Raise your right hand. Put on your first witness, State.
[DEFENSE]: We do not need to have a hearing. I think that Mr. Wilson just wanted to express something to the Court if the Court will hear him for three minutes?
[COURT]: I already heard it. He says he is not in violation of his probation. He is not guilty. If that’s how he feels, I’m going to give him a hearing. Is that what you want to do “yes” or “no?” It’s a “yes” or “no” question. I am out of here pretty soon, so we are going to do this one way or another. Raise your right hand and be sworn.
[DEFENSE]: Pass this for one moment.
(Proceedings held on unrelated matters)
[COURT]: Page 12 James Wilson. What is Mr. Wilson going to do?
[WILSON]: Your Honor, I’m going to, I guess, I’m going to have to admit this but—
[DEFENSE]: Mr. Wilson’s frustration, Judge, is with the underlying charge, the way that that occurred and his continuing belief of his innocence in that case.
[COURT]: Mr. Wilson, let me tell you something. The underlying charge is gone. It is a [fate] accompli as we call it. It is a done deal. The only question is: Were you on probation?
[WILSON]: Yes.
[COURT]: Did you violate probation is the issue.
[WILSON]: Yes.
[COURT]: Whether or not rightfully or wrongfully on probation, you were on probation, right?
*1050 [WILSON]: Right, and I understand the position this Court is in and I will admit it.
[COURT]: That’s the only question. The only question is: Did you violate the probation?
[WILSON]: According to the Brevard County Court I did.
[COURT]: Okay. That’s the only question.
[WILSON]: Judge, because due to the fact it’s a third degree felony for me to — -if I did not let my neighbors know what I’m on probation for, this is what I understood by my probation officer.
[COURT]: That is immaterial.
[WILSON]: I let my neighbors know. That’s the reason why they wanted me out of the neighborhood. That’s the reason they came with these false allegations against me. This is what I’m trying to bring to the — I brought—
[COURT]: You are saying that what they are alleging violates you is all a lie? Is that what you are saying?
[WILSON]: That’s exactly what I’m saying, Your Honor. It’s only saying because I was the apartment building manager and I was reporting to the landlord things that they were doing that wasn’t right instead of me calling the police. And if they were accusing me, they should have called the police a long time ago. It was a third degree felony for me to live in an area—
[COURT]: I don’t know what you are saying, but the charge that I’m looking at that was filed in the court in January of this year, you were charged with exposure of sexual organs. So, you are saying you didn’t do any of that?
[WILSON]: No, ma’am. I didn’t do any of that.
[STATE]: The state is revoking the 67 months.
[COURT]: All right. Let’s go, rock and roll. Swear in your witnesses.
[WILSON]: Your Honor, excuse me. You don’t have to do this.
[STATE]: The state is revoking the 67 months, so you know—
[COURT]: You either want it or you don’t.
[WILSON]: They are revoking the 67 months?
[COURT]: It’s the bottom of the guidelines.
[WILSON]: We’ll go with this 67 months.
[COURT]: Then raise your right hand and be sworn or affirmed.
[WILSON]: Can I say one thing?
[COURT]: No. The only person who is going to say anything is this probation officer or me.
[WILSON]: Judge, I’m going to file a Motion for Ineffective Assistance — •
[COURT]: No.
[WILSON]: Go with the—
[COURT]: I’m going to take testimony from this man [probation officer] and if I need to continue it, I will. Sit down. [After which the probation officer was sworn and testified].
A fair reading of the transcript reveals that it was the State who initiated the plea discussions with Wilson and offered him a plea of sixty-seven months state prison followed by probation. The trial court was simply trying to ascertain if Wilson was willing to accept the plea. Wilson, however, as we learn later in the proceedings, was attempting to obtain a better offer from the trial court by arguing his innocence. The trial court initially mistook Wilson’s argument as a claim that he was innocent of the charges that initially resulted in him being placed on probation, and, therefore, explained to Wilson that was not the issue before the court. The *1051 issue before the court was not whether he should have been placed on probation, but rather, whether he had done anything to violate his probation. Wilson eventually explained that what he was challenging was the Brevard County conviction, which was the subject matter of the instant violation of his probation. Upon hearing Wilson’s explanation, the State revoked its offer and the trial court attempted to proceed with the hearing. Wilson, however, told the trial court he wanted to accept the State’s offer, to which the trial court responded by telling him to raise his right hand to be sworn. When, however, it became clear that Wilson was not satisfied with the services of his attorney (he stated that he was going to claim ineffective assistance of counsel), the trial court proceeded with the hearing.
Based upon this record, I find no fault with the majority’s conclusions that the trial court became involved in the plea discussions and that there was a great disparity between the offered plea and the sentence imposed. Where, I disagree, is with the majority’s findings that the trial judge’s comments converted the State’s offered plea into a judicially offered one and that the trial court, in essence, became an advocate of the State’s offered plea by urging the defendant to accept it. In the absence of these factors, I would conclude that Wilson failed to establish a presumption of vindictiveness and thus, was required to prove actual vindictiveness. See Wilson, 845 So.2d at 149, 156 n. 8 (holding that where the circumstances do not create a presumption of vindictiveness, the burden remains upon the defendant to prove actual vindictiveness)(citing Alabama v. Smith, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)). Here, the trial court did not initiate the plea discussions, did not urge Wilson to accept the plea, did not state nor imply that the sentence would be higher if he exercised his right to a hearing, and articulated the reasons for the increased sentence. In fact, the trial court specifically told Wilson that if the trial court agreed with him after hearing the evidence, he would walk out of the courtroom “a free man.” Rather than urging Wilson to accept the plea, or threatening him with a harsher sentence if he elected to present his case, the trial court encouraged him to do so. These factors actually dispel any suggestiveness of vindictiveness.
A presumption of vindictiveness may be rebutted by objective information in the record
In Wilson, the Florida Supreme Court recognized, as did the United States Supreme Court in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and its progeny, that a presumption of vindictiveness may be overcome by objective information in the record justifying the increased sentence. Wilson, 845 So.2d at 148.
In Wilson, the Florida Supreme Court reviewed two cases, and applied the totality of circumstances analysis in determining whether the actions of the trial judge gave rise to a presumption of vindictiveness and whether the State was able to produce affirmative evidence in the record to dispel the presumption. In the first case, Byrd v. State, 794 So.2d 671 (Fla. 5th DCA 2001), the Court noted that while the trial judge did not initiate the plea discussions, (1) the trial judge exceeded the limits of Warner by both urging Byrd to accept the plea and by stating that if Byrd chose to go to trial, he would not receive a sentence as low as the one being offered; and (2) there was a huge disparity between the sentence offered and the sentence imposed, thus creating a presumption of vindictiveness which the State failed to rebut. Wilson, 845 So.2d at 157-58.
The second case under review was Wilson v. State, 792 So.2d 601 (Fla. 4th DCA *1052 2001). In that case, the plea offer was initiated by the trial judge, which the defendant rejected. Before hearing any of the evidence, the trial court told the defendant that the court’s offer was the bottom of the guidelines and that in the court’s opinion the defendant should have accepted the plea. The Florida Supreme Court specifically stated,
[I]t is not simply the increased sentence that gives rise to an unrebutted presumption of vindictiveness. Rather, it is the judge’s comment that Wilson should have accepted the offer, coupled with the increased sentence imposed shortly thereafter, and the absence of any explanation for the increase that give rise to the unrebutted presumption of vindictiveness.
Wilson, 845 So.2d at 158.
The instant case sharply contrasts with Byrd and Wilson. Unlike Byrd, the trial judge in the instant case did not urge the defendant to accept the plea nor threaten the defendant with receiving a higher sentence if he did not accept the plea offer, and unlike Wilson, the trial judge in the instant case did not offer any opinion regarding the defendant’s choice whether to accept the plea. More importantly, the instant case differs from Byrd and Wilson in that the trial judge in the instant case specifically articulated her reasons for the higher sentence at the time she imposed the sentence, thereby rebutting any presumption of vindictiveness.
What the trial judge learned during the hearing was that Wilson committed two lewd and lascivious assaults upon children in 1999 by exposing himself and masturbating in their presence, and that he was placed on eight years of probation for those offenses in 2000. In 2001, while on probation, Wilson committed exactly the same offenses upon four more children and was sentenced to eighteen months state prison followed by eight more years of probation for both the 1999 and the 2001 offenses. After being released from prison, additional affidavits for violation of probation were filed for failing to complete the MDSO (sexual offender treatment) program, failing to report, changing his address, and violating his curfew. These violations were ultimately dismissed, providing Wilson with the continued opportunity to successfully complete his probation. The final violations occurred in Brevard County, where Wilson was again charged with and convicted of exposing himself. These convictions were affirmed on appeal and were the subject of the instant probation violation hearing. When imposing the sentence, the trial judge clearly articulated her reasons for the sentence imposed:
The court finds that the state has proven by the preponderance of the evidence that the defendant has committed a willful and substantial violation.
I find that had the defendant come before me on his first case, on a curfew violation of five minutes, he would have deserved 30 years, but, in fact, he actually committed the same reprehensible and offensive crime showing that he had an inability to comport his behavior to laws and take advantage of the grace of the Court which is what probation is, Mr. Wilson.
And finally, three strikes you are out. The first time you committed the crime, you got put on probation, the second time you committed the self-same crime — -twice as bad. Four victims instead of only two. And that is only what the state felt they could prove.
And then the third thing is the third time you have done this same thing, and the Court [h]as found, and another Court, and I must abide by that finding and I’m not retrying that case or any credibility issues.
*1053 The appellate courts have found there was competent and substantial evidence to find beyond a reasonable doubt that you committed an indecent exposure, which is just another variation of your prior two very significant crimes.
This Court finds that you were given the grace of the Court twice, that you violated the Court’s trust in you, society’s trust in you, and you cannot conform your behavior to the requirements of the law.
Bell v. State, 847 So.2d 558 (Fla. 3d DCA 2003), is a case strikingly similar to the instant case. Bell had been offered a plea by the State of 364 days in the Dade County Jail, followed by four years of probation which included a special condition that he perform 200 hours of community service. When Bell rejected the State’s offer, the trial judge offered to delete the community service if he was willing to accept the plea. Bell rejected both the State’s and trial court’s offers, proceeded to trial, and was sentenced to thirty years incarceration. Bell argued that a presumption of vindictiveness arose due to the trial court’s involvement in plea discussions with him and the great disparity between the plea offers and the sentence imposed. This court (Judges Cope, Gode-rich, and Green) unanimously affirmed the sentence after concluding that although the trial court was involved in the plea discussions with Bell, added its own modification to the plea after it was rejected by Bell, and imposed a significantly higher sentence after trial, Bell nonetheless, failed to establish vindictiveness. This court observed that while there was a great disparity between the plea offer and the sentence imposed, the trial court did not become an advocate for the State’s plea offer; did not state or imply there would be future consequences for the failure to accept the plea; at the time of the plea discussions, the trial court had not yet heard the evidence; and the trial court’s remarks at sentencing made it clear why it was imposing such a harsh sentence. Id. at 564.
Similarly, in the instant case, the trial court did not state or imply there would be future consequences for failure to accept the plea and, in fact, encouraged Wilson to exercise his right to a hearing and told him that if she “agreed with him” Wilson would walk out of the courtroom a free man. Additionally, there was ample evidence in the record to rebut any presumption of vindictiveness. Like Bell, the trial court was persuaded, based upon the evidence it heard at the hearing, to impose the sentence it imposed, and clearly articulated the reasons for the sentence imposed.
While the facts in Prado v. State, 816 So.2d 1155 (Fla. 3d DCA 2002), are in sharp contrast with the instant case and with Bell, the analysis, holding, and observations are instructive. In Prado, while the State had initiated the plea discussions with the defendant; the trial court conducted a lengthy exchange with the defendant regarding the benefits of accepting the State’s four-year plea offer; and the transcript revealed that the trial court had become a zealous advocate for the plea, emphasizing its merits, the uncertainly of the outcome, and the possibility that the defendant might receive a harsher sentence upon conviction. These factors, coupled with the exponentially longer sentence (forty years as opposed to the four years offered pre-trial), created a presumption of vindictiveness. Because the record revealed no other reason for the imposition of the harshness of the sentence, this court concluded that the presumption was unrebutted and reversed the sentence.
Unlike Prado, the trial judge in the instant case did not advocate the merits of the plea; did not attempt to frighten or coerce Wilson into accepting the plea; did *1054 not infer future negative consequence if he failed to accept the plea; and provided her reasons for imposing the sentence, thereby rebutting any presumption of vindictiveness. As Judge Sorondo noted in his concurring opinion in Prado,
I emphasize that “[a] judge’s preliminary evaluation of the case is not binding, since additional facts may emerge prior to sentencing which properly inform the judge’s sentencing discretion.” State v. Warner, 762 So.2d at 514. Accordingly, the fact that a trial judge expresses an inclination to accept a state plea offer, does not mean that he or she will be bound to impose the same sentence after hearing the trial, if the evidence raises concerns that were not perceptible from the usually abbreviated representations made to the court during the plea bargaining process.... Nevertheless, a judge who, having been advised of the details of the case and having been actively involved in an unsuccessful plea bargaining discussion, wishes to impose a post-trial sentence more severe than that contemplated by his or her plea negotiations, would be wise to explain his or her reasons for the greater sentence in order to dispel any appearance of vindictive sentencing.
Prado, 816 So.2d at 1164.
The majority takes the position that the trial judge learned nothing new during the presentation of the evidence at the hearing, and, therefore, the presumption of vindictiveness was unrebutted. I respectfully disagree. First, contrary to the majority opinion, the instant trial judge was not the judge that placed Wilson on probation on December 30, 1999, which would have required a review of the arrest affidavit or at least a proffer of the facts before accepting his plea. Additionally, while the majority concludes that when the plea was being discussed the trial judge was aware of Wilson’s history with the court and the facts of his cases, there is nothing in the record to support such a finding. This was not the trial judge that placed Wilson on probation in 1999. Nor was she the trial judge who vacated Wilson’s plea on January 20, 2000. The instant trial judge was also not the trial judge on August 14, 2000, when Wilson was offered a new plea, accepted the offered plea, was placed on probation, and the trial judge arguably considered the facts of the case in determining whether there was a factual basis for the plea. Nor was she the judge when Wilson violated his probation by exposing himself and masturbating in front of four children (the same offense he was on probation for), admitted to violating his probation on August 16, 2001; was sentenced to eighteen months state prison followed by eight years of probation; and the trial court was appraised of the facts regarding the substantive offenses he committed while on probation. In fact, this trial judge’s first involvement with this defendant was at the end of 2004. In late 2004, this trial judge accepted Wilson’s admissions that he violated his curfew on two occasions and awarded him credit for the time he served prior to his admissions. There certainly is no evidence in the record to suggest the trial judge was familiar with the facts regarding the underlying offenses and Wilson’s history of supervision when she simply awarded him credit for time served regarding these technical violations.
The last event which brought Wilson before this trial judge occurred approximately six months prior to the instant probation violation hearing. An affidavit for violation of probation was filed on January 31, 2005. It, however, was dismissed by the State on February 4, 2005, without a hearing. This event, involved no court participation or approval.
While I have the greatest respect for my colleagues, to make a finding that the trial *1055 judge was aware of the facts regarding the substantive offenses which resulted in Wilson being placed on probation; the substantive offenses he committed during the ensuing years; and the history of his lengthy supervision, which for the most part was before a different judge, is speculative and unreasonable. In every felony division in Miami-Dade County, over two thousand new felony cases are assigned to each trial judge every year, which result in multiple appearances by the defendants throughout the year. On any given day, a trial judge may have anywhere from ten or twenty to a hundred fifty or more defendants on the trial judge’s calendar. While the court file may contain a wealth of information about a defendant and the defendant’s case, the file is under the control and in the possession of the court clerk, not the trial judge. It is generally only when the trial judge asks to review an arrest affidavit or a document, that the court clerk will provide these documents to the trial judge. Due to the volume of cases and matters before the trial judge, the trial judge generally will not review an arrest or probation violation affidavit unless asked to do so, or does so when deciding whether to accept a negotiated plea, when reviewing a defendant’s bond, or in making a determination during the plea colloquy whether there is a factual basis to support the defendant’s plea to the charges. Given the reality of the situation, to expect a trial judge to know and to remember the facts and circumstances of each defendant’s case or cases, is unrealistic. In the instant case, because the record reflects that there were no discussions regarding the facts of Wilson’s initial case in 1999, the facts regarding the 2001 case, the history of Wilson’s supervision which includes multiple violations and incarceration, the facts regarding the current violations and there is no evidence that the trial court had reached the point in her discussions with Wilson where she had begun to review the documents in his file, I cannot agree that her knowledge can be assumed.
CONCLUSION
While the trial judge did become involved in the plea discussions with Wilson and did impose a much harsher sentence after hearing the evidence, based upon the totality of the circumstances, which includes the absence of the remaining factors and the trial court’s specific statements on the record, I would conclude that Wilson failed to demonstrate a presumption of vindictiveness. The trial judge clearly did not initiate the plea discussions; did not become an advocate for the benefits of the plea; did not encourage Wilson to accept the plea; did not threaten or attempt to coerce him into accepting the plea; and articulated her reasons for imposing the sentence she imposed. Wilson, therefore, was required to prove actual vindictiveness, which he clearly cannot do. However, even if I were to conclude that the sentence was presumptively vindictive, because I believe that the record clearly rebuts that presumption, I would affirm and must respectfully disagree with the majority opinion.
While the word “vindictive” is a term of art which does not imply personal animosity on the part of the trial judge, this expansive application of the term does not alter the analysis. Before finding vindictiveness in the sentencing context, the reviewing court must still examine all of the factors articulated in Wilson and conclude that based upon the totality of the circumstances there is a presumption that the sentence imposed was in retaliation for the defendant’s decision to exercise his right to a trial or in this case, a hearing. If a presumption of vindictiveness is demonstrated, the reviewing court must then determine whether the presumption was rebutted. Thus, while I agree with the majority that the sentence imposed by the *1056 trial judge appears excessive, since the trial judge did not initiate the plea; did not become an advocate for the benefits of the plea; did not encourage Wilson to accept the plea nor threaten or attempt to coerce him into accepting the plea; actually encouraged Wilson to exercise his right to a hearing, and told him that if after hearing all of the evidence she agreed with him, he would walk out of the court a free man, I cannot agree that the sentence was presumptively vindictive. To make such a finding on this record would suggest that vindictiveness may be found on the length of the sentence alone, a conclusion which is inconsistent with prior rulings of this court and our sister courts. See Wilson, Byrd, Bell, and Prado. For this reason and because the trial court clearly articulated its reasons for the sentence imposed, thereby rebutting any presumption of vindictiveness, I would affirm.