847 So.2d 558 (2003)
Gary Paul BELL, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D01-2607.
District Court of Appeal of Florida, Third District.
June 11, 2003.
*560 Bennett H. Brummer, Public Defender, and Marti Rothenberg, Assistant Public Defender, for Appellant.
Charles J. Crist, Jr., Attorney General, and Michael J. Neimand and Melissa Vaughan Rubin, Assistant Attorneys General, for Appellee.
Before COPE, GODERICH and GREEN, JJ.
COPE, J.
Gary Paul Bell appeals his conviction and sentence for attempted kidnapping. We affirm.
Defendant-appellant Bell argues that the trial court should have excluded as hearsay the officer's testimony regarding the victim's account of the crime. The trial court admitted the testimony under the hearsay exception for excited utterances.
The victim testified that she was walking along the street during the daytime when the defendant twice drove up to her in his van and offered to give her a ride to her destination. She refused. When the victim next saw the defendant he was standing on the sidewalk with his van parked nearby. He grabbed her around the neck, held a gun to her head, and attempted to force her into the van. She broke free, ran into traffic, pounded on cars, and asked for help in getting away. The defendant, standing nearby, pointed his gun and threatened to shoot her.
The victim returned to her house and called the police. They found the victim to be hysterical and very fearful that the defendant may have followed her home. The victim was so upset that she could not speak. It took the officers fifteen or twenty minutes to calm the victim down to the point where she could give them a statement.
The hearsay exception for excited utterances applies to "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." § 90.803(2), Fla. Stat. (2001).
The Florida Supreme Court has said:
The essential elements necessary to fall within the excited utterance exception are that (1) there must be an event startling enough to cause nervous excitement; (2) the statement must have been made before there was time to contrive or misrepresent; and (3) the statement must be made while the person is under the stress of excitement caused by the event.
The spontaneous statement exception and the excited utterance exception often overlap. However, as noted by Professor Ehrhardt:
The two exceptions differ mainly in the amount of time that may lapse between the event and the statement *561 describing the event. Under Section 90.803(2) it is not necessary that there be contemporaneity between the event and the statement. As long as the excited state of mind is present when the statement is made, the statement is admissible if it meets the other requirements of Section 90.803(2). This excited state may exist a substantial length of time after the event. Factors that the trial judge can consider in determining whether the necessary state of stress or excitement is present are the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event and the subject matter of the statements. Whether the necessary state of mind is present is a preliminary fact for the court to determine pursuant to Section 90.104.
State v. Jano, 524 So.2d 660, 661 (citation omitted) (quoting Charles W. Ehrhardt, Florida Evidence § 803.2 (1984)) (emphasis added).
The defendant argues that the victim's statements in this case fail the excited utterance test because there was a time delay of approximately 50 minutes between the time of the incident and the time the victim became calm enough to speak. According to the defendant, this was sufficient time for the victim to contrive or misrepresent.
As the Jano decision indicates, however, points two and three of the test are interwoven. The theory of this hearsay exception is that so long as the declarant remains under the stress of excitement caused by the event, the declarant is unlikely to contrive or misrepresent.
In this case the investigating officer described the victim as hysterical when he first reached the house. She kept going to the window and looking outside to be sure that the defendant was not there. She was so upset she could not speak at all. The trial court permissibly concluded that the victim remained sufficiently under the stress of excitement of the event to make this an excited utterance for purposes of the hearsay exception. Henyard v. State, 689 So.2d 239, 251 (Fla.1996). Even if there were any error here, and we do not think there is any, we fail to see any harm as the victim herself testified and was subject to defense cross-examination on all of this.[1]
Turning to the defendant's other claims, the victim identified the defendant out of court and in court, and the evidence was legally sufficient to convict him. The ruling on the request for continuance was within the trial court's discretion. The defendant's complaints about his counsel after the State rested its case did not involve specific allegations of incompetence and did not call for an inquiry by the court. See Branch v. State, 685 So.2d 1250, 1252 (Fla.1996); Davila v. State, 829 So.2d 995 (Fla. 3d DCA 2002). There is no merit to the defendant's argument that *562 corpus delicti was insufficiently proved. See Schwab v. State, 636 So.2d 3, 6 (Fla. 1994).
The defendant correctly argues that there were errors in the jury instructions in this case, although those errors were not called to the attention of the trial court. The errors were, however, harmless under the circumstances of this case, and did not amount to fundamental error. See Reed v. State, 837 So.2d 366, 369-70 (Fla.2002).
The defendant in this case was charged with attempted kidnapping. The kidnapping statute provides, in relevant part:
787.01 Kidnapping; kidnapping of child under age 13, aggravating circumstances.
(1)(a) The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
....
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
§ 787.01(1)(a)2., 3., Fla. Stat. (1997).[2]
Subparagraphs 2 and 3 are alternatives for each other. The State need only prove the elements of subparagraph 2, or subparagraph 3, in order to convict the defendant. Carter v. State, 762 So.2d 1024, 1027 (Fla. 3d DCA 2000).
With respect to subparagraph 2, the jury instruction stated, "Gary Bell acted with the intent to commit or facilitate the commission of an assault and or battery and or attempted kidnapping." The defendant is correct in saying that this instruction is erroneous.
Under subparagraph 2, the State must establish that the defendant acted with intent to commit a felony. In this case, the court erred by including assault and battery in the jury instruction. That is so because assault and battery are misdemeanors, not felonies. See §§ 784.011, 784.03, Fla. Stat. (1997).
The defendant is also correct in saying that the offense of attempted kidnapping should not have been listed. That is so because the substantive charge in this case was attempted kidnapping. It is impermissible and circular to charge that the defendant committed attempted kidnapping with the intent to commit attempted kidnapping. Harrison v. State, 743 So.2d 178, 179 (Fla. 3d DCA 1999). The kidnapping statute requires that when the defendant unlawfully confined, abducted, or imprisoned the victim, the defendant did so with intent to commit another, different offense. Id.
There is, however, no reversible error in this case. That is so because of an offsetting error. The jury instructions told the jury that in order to convict the defendant, the jury must find that the defendant had committed the acts described under both alternatives of the kidnapping statute, i.e., subparagraph 2 and subparagraph 3.
The jury found the defendant guilty as charged. In so doing, the jury necessarily found the defendant was guilty under subparagraph 3, that is, that the defendant acted with the intent to "[i]nflict bodily harm upon or to terrorize the victim or another person." § 787.01(1)(a)3., Fla. Stat. (1997). Since the instruction under subparagraph 3 was correct and the jury necessarily convicted under subparagraph 3, it follows that the error in subparagraph *563 2 was harmless, and the defendant is not entitled to a new trial.
The defendant argues that the sentence imposed on him was vindictive and asks for a new sentencing proceeding. See Wilson v. State, 845 So.2d 142, 145 (Fla.2003). We reject the claim of vindictive sentencing.
During a hearing on the defendant's motion to suppress evidence, the judge inquired about the status of plea negotiations between the State and the defendant. The State had extended a plea offer of 364 days in jail followed by 4 years of probation, 200 community service hours, and a stay-away order. The parties explained that there had been extensive negotiations but the plea had not been accepted. The defendant confirmed that he did not want to accept the plea. He stated that he needed to work to support his family and would be willing to enter into a plea for work release or possibly work release after six months incarceration. The trial court indicated that it would be willing to eliminate the community service hours, but would not otherwise renegotiate the terms that the State had offered. The defendant reiterated that he would not accept the plea, and the case proceeded to trial.
During the trial, the court heard the victim's testimony about the attempted kidnapping. At the sentencing proceeding, the victim again spoke briefly. The defendant's wife spoke, as did the defendant.
The court then stated:
THE COURT: Okay. Thank you. When one assumes these black robes one of the things you rapidly come to realize is that at the moment [this] is the hardest part of what my duties are and the law and the constitution are because in a situation like this, there are no winners. There you have the victim over here who has literally gone through hell.
Her life will never be the same. She is certainly not a winner. But him getting convicted here by a jury of his peers, she doesn't win because she cannot undo what she has gone through.
Mr. Bell is certainly not a winner. He is a young man that had no restrictions or limitations in his life and I have got to know him for the time he has been here before the court, many times in all the resets and all the court dates that we have had and I see his family is all here, a devoted wife who has not abandoned him but who has supported him to the very last moments and those children.
It is all painful to me to see the children. Because they certainly did not have anything to do nor did they ask to be put in the midst of this tragedy and that is what it is, it is a tragedy.
It is a personal tragedy. It is a civic tragedy. However, duty must be done and you have been charged and you have been convicted and the court and jury [have] listened to the evidence and found this to be an extremely hideous crime that did not complete itself because you either failed or were prohibited by someone to finish the crime.
You have stood on your right[s], all along, and I respect that, your right of remaining silent and your right to pleading not guilty. However, now the burden has shifted and in accordance with our law the jury of your peers has found you guilty and they even believed that the state has proved this case against you beyond and to the exclusion of every reasonable doubt. And based upon that I must pass sentence.
At this time, as I said, having been found guilty by a jury of your peers of the crime under statute number 787.01, attempted kidnapping with a firearm, *564 the court hereby sentences you to thirty years in the state penitentiary.
Subsequently the trial court mitigated the sentence to twenty years.
The defendant argues that a presumption of vindictiveness arose in this case because of the trial court's plea discussion with the defendant, and because of the great disparity between the plea offer and the twenty-year sentence eventually imposed. We do not agree with the defendant's argument.
To begin with, most criminal cases are disposed of by plea agreement. In the course of managing its docket, the trial court is certainly allowed to ask the parties whether the State has extended a plea offer, and what the status of the plea negotiation is. Plainly the trial court needs to know whether the case is, or is likely to be, going to trial. Thus, the inquiry by the trial court regarding the status of plea negotiations was perfectly permissible.
In this case, the State had made a plea offer which was pending. Upon inquiring about the status of the plea negotiation, the defendant explained to the court why he was unwilling to accept the state's offer. The court then indicated the one modification that it would entertain, the elimination of the community service hours. This was permissible under State v. Warner, 762 So.2d 507, 514 (Fla.2000). The court refrained from becoming an advocate for the State's plea offer. The court did not imply or state that there would be any future adverse consequences from failure to accept the plea offer. See Wilson v. State, 845 So.2d at 158. Upon the defendant's rejection of the offer, the court proceeded with the pending matters and preparation for trial.
While there was a significant disparity between the State's plea offer and the sentence eventually imposed by the court, the reasons for this are clear in the record. At the time of the plea discussion, the court had not yet heard the testimony of the victim. The court's remarks make clear the court's view of the severe impact on the victim and that this serious crime could have been even worse had the victim not escaped. We conclude that the sentence was entirely permissible and that the defendant has failed to establish vindictiveness.
Affirmed.
NOTES
[1] The defendant argues that allowing the police officer to repeat the victim's account of the incident amounts to unfair bolstering of the victim's testimony. The defendant relies on Reyes v. State, 580 So.2d 309 (Fla. 3d DCA 1991). That, however, was a case in which there was contradictory evidence regarding whether the child sexual abuse took place at all, leaving the victim saying yes, a child witness saying no, and the defendant denying that the incident took place. Id. at 310.

In the present case, there was no evidence which contradicted the victim's description of the attempted kidnapping. The defendant's defense was misidentification. As to the identification, the victim saw the defendant in the neighborhood two months after the incident and called the police, who arrested him. In addition to identifying the defendant out of court, she identified him at trial.
[2] The crime date was June 1, 1999.