CORTINAS, Judge.
The defendant, James Wilson (“Wilson”), appeals on the ground that he was subjected to vindictive sentencing when the trial court imposed a ninety year sentence for a probation violation after he was offered, and indicated his acceptance of, a guilty plea which would have resulted in sixty-seven months incarceration. We agree.
“Judicial participation in plea negotiations followed by a harsher sentence is one of the circumstances that, along with other factors, should be considered in determining whether there is a ‘reasonable likelihood’ that the harsher sentence was imposed in retaliation for the defendant not pleading guilty and instead exercising his or her right to proceed to trial.” Wilson v. State, 845 So.2d 142, 156 (Fla.2003) (citation omitted).
The other factors that should be considered include but are not limited to: (1) whether the trial judge initiated the plea discussions with the defendant in violation of [State v.] Warner [, 762 So.2d 507 (Fla.2000) ]; (2) whether the trial judge, through his or her comments on the record, appears to have departed from *1041 his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (3) the disparity between the plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.
Id. (footnotes omitted). “[T]o determine whether a defendant’s constitutional right to due process of law was violated by the imposition of an increased sentence after the unsuccessful plea discussions in which the trial judge participated,” the court must consider the totality of the circumstances. Id. (approving Charles v. State, 816 So.2d 731 (Fla. 3d DCA 2002) and Prado v. State, 816 So.2d 1155 (Fla. 3d DCA 2002)) (“For example, in Charles v. State ... the Third District examined all the circumstances surrounding a rejected plea and the sentence imposed after trial, and concluded that the sentence was presumptively vindictive.”). If the totality of the circumstances gives rise to a presumption of vindictiveness, the burden shifts to the State “to produce affirmative evidence on the record to dispel the presumption.” Id.

Presumption of Vindictiveness Arises from the Totality of the Circumstances

Here, the record reflects the following circumstances. In 1999, Wilson was originally sentenced to eight years of probation after pleading guilty to two counts of lewd acts in the presence of a person less than sixteen years of age. While on probation, Wilson was charged with four additional counts of lewd exhibition in the presence of a person less than sixteen years of age. Wilson pled guilty, both to the four charges and to the violation of probation, his probation was revoked, and he was sentenced to eighteen months in prison, followed by eight years of probation.
On May 26, 2005, Wilson was charged with exposure of sexual organs after two of his neighbors reported seeing him outside naked. Wilson was immediately taken into custody, and was tried in Brevard County, where he resided. Wilson was convicted in Brevard County Court and sentenced to 364 days incarceration. The conviction was affirmed on appeal by the Fifth District.
Wilson was then brought to Miami-Dade County to face charges that he violated his probation by committing a new crime and he appeared in Miami-Dade Circuit Court for a probation violation hearing. When Wilson’s case was called, the court inquired whether Wilson would accept a plea or whether he would like to proceed with a violation hearing. Wilson indicated that he would like to accept the State’s plea offer of sixty-seven months, but that he would also like to make a statement to the court. The trial court indicated that it was only interested in hearing a plea or testimony on the probation violation. Again, the court asked whether Wilson would like to accept the plea and defense counsel responded that there was a plea. However, when the court asked Wilson directly if he wanted to accept the plea, the following colloquy ensued:
THE DEFENDANT: I want to — if I can say one thing, Your Honor? You have a sign, “We who labor here seek only the truth.” If I give you the truth — my truth is that I’m not guilty of doing what they say.”
THE COURT: Fine. I have witnesses. I’ll take testimony and I’ll decide. If you are right and then if I agree with you, you walk out a free man. How is *1042 that? Let’s go. Raise your right hand. Put on your first witness, state.
Defense counsel advised the court that a violation hearing was not necessary and that the defendant simply wanted to “express something to the Court.” The trial court responded, “I already heard it. He says he is not in violation of his probation. He is not guilty. If that’s how he feels, I’m going to give him a hearing.” Wilson and his attorney were given time to confer, and, when they came back before the court, Wilson indicated he was willing to accept the plea, although he still felt he was innocent of the underlying crime.[1] The following colloquy ensued:
THE COURT: Mr. Wilson, let me tell you something. The underlying charge is gone. It is a [fait] accompli as we call it. It is a done deal. The only question is: Were you on probation?
THE DEFENDANT: Yes.
THE COURT: Did you violate probation is the issue.
THE DEFENDANT: Yes
THE COURT: Whether or not rightfully or wrongfully on probation, you were on probation, right?
THE DEFENDANT: Right, and I understand the position this court is in and I will admit it.
THE COURT: That’s the only question. The only question is: Did you violate the probation?
THE DEFENDANT: According to the Brevard County Court I did.
THE COURT: Okay. That’s the only question.
Wilson then tried to explain that he thought his conviction for exposure of sexual organs was the result of retaliation from his neighbors because they did not want a sex offender to live in their neighborhood.
THE COURT: I don’t know what you are saying, but the charge that I’m looking at that was filed in the court in January of this year, you were charged with exposure of sexual organs. So, you are saying you didn’t do any of that?
THE DEFENDANT: No, ma’am. I didn’t do any of that.
MS. HILLYER: The state is revoking the 67 months.
THE COURT: All right. Let’s go, rock and roll. Swear in your witness.
THE DEFENDANT: Your Honor, excuse me. You don’t have to do this.
MS. HILLYER: The state is revoking the 67 months, so you know—
THE COURT: You either want it or you don’t.
THE DEFENDANT: They are revoking the 67 months?
THE COURT: It’s the bottom of the guidelines.
THE DEFENDANT: We’ll go with this [sic] 67 months.
THE COURT: Then raise your right hand and be sworn or affirmed,
THE DEFENDANT: Can I say one thing?
THE COURT: No. The only person who is going to say anything is this probation officer or me.
THE DEFENDANT: Judge, I am going to file a Motion for Ineffective Assistance' — •
*1043 THE COURT: No.
THE DEFENDANT: Go with the—
THE COURT: I’m going to take testimony from this man and if I need to continue it, I will. Sit down. Yes, sir. Raise your right hand and be sworn or [afjfirmed.
This is sufficient judicial participation in plea negotiations to raise a presumption of vindictive sentencing. See Wilson, 845 So.2d at 156 (“[I]f the judge participates in the plea negotiations beyond what is contemplated by Warner,[2] or by his comments appears to have departed from the role of a neutral arbiter, then these actions alone may give rise to a presumption of judicial vindictiveness that would shift the burden to the State to produce affirmative evidence on the record to dispel the presumption.”). Here, the judge’s statement “[y]ou either want it or you don’t” cannot be interpreted as anything but an offer for Wilson to plead to the sixty-seven months. Although the dissent focuses on who initiated the plea discussions, the presumption of judicial vindictiveness may arise from judicial participation in plea discussions regardless of which party initiated those discussions. See id.
Moreover, the record clearly indicates the State revoked the sixty-seven month offer, yet the trial court continued to offer the sixty-seven months to the defendant. Further, the judge’s statement “[i]t’s the bottom of the guidelines” can be read no other way but as an attempt to urge Wilson to take the plea offer. Although a trial judge may inquire about a defendant’s willingness to accept a plea, Bell v. State, 847 So.2d 558, 564 (Fla. 3d DCA 2003), “it is not the judge’s role to advocate for a plea offer.” Wilson, 845 So.2d at 156. Although the trial judge here stopped short of affirmatively recommending that Wilson accept the plea offer, the judge’s statement “[y]ou either want it or you don’t” coupled with “[i]t’s the bottom of the guidelines” constituted judicial participation in plea negotiations.
The trial judge’s comments in this case differ from comments a judge makes when simply explaining to a defendant how a particular sentence offered compares to the defendant’s exposure under the guidelines. Cf. Snow v. Crosby, 851 So.2d 222, 223-24 (Fla. 3d DCA 2003)(holding that there is no presumption of vindictiveness where the trial court merely confirms that the defendant understood the terms of the plea agreement). This is especially true where both the State and the trial court had already apprised Wilson on the record that the sixty-seven month plea offer was at the bottom of the guidelines. By repeti *1044 tively apprising Wilson of a plea offer[3] and the fact that it constituted the bottom of the guidelines, the judge’s comments were clearly meant to encourage Wilson to accept the plea offer.
The excerpts from the record cited above demonstrate that Wilson was willing to plead guilty because he understood that his conviction violated his probation, despite the fact that he took issue with the underlying facts which resulted in his conviction. The trial court was clearly frustrated with Wilson’s insistence that he be heard, and, by its willingness to have him sworn, appeared to be willing to accept Wilson’s plea, as evidenced by the portions of the transcript emphasized above in bold. See Soto v. State, 874 So.2d 1215, 1217 (Fla. 3d DCA 2004)(stating that “continued protestations of innocence and unwillingness to admit guilt should not be factors taken into consideration by a court in sentencing a defendant”) (citations omitted).
The facts of this case are similar to those of Wilson, the Florida Supreme Court’s landmark case on judicial vindictiveness cited throughout this opinion. In Wilson, the defendant was charged with violating his probation. Wilson, 845 So.2d at 146 (citing Wilson v. State, 792 So.2d 601, 601-02 (Fla. 4th DCA 2001)). The trial judge offered the defendant 128 months to plead guilty. Id. The defendant indicated that he wanted to accept the plea, but also wanted to put on testimony from himself and his fiancée. Id. The judge refused to hear such testimony and revoked the plea offer, indicating that the case would be set for a final probation violation hearing. Id. at 146-47. In doing so, the trial judge stated to the defendant “the court’s offer was the bottom of the guidelines and in my opinion you should have taken it.” Id. at 147. The trial judge then sentenced the defendant to 150 months without any explanation for the increase. Id. Based on the sentence increase and the judge’s comments, the Florida Supreme Court found an unrebut-ted presumption of vindictiveness sufficient to require resentencing before a different judge. Wilson, 845 So.2d at 158.
While Wilson, with strikingly similar facts, was found to be a case of judicial vindictiveness as a result of a twenty-two month sentence increase, this case is even more compelling. Here, we deal with a disparity of behemothic proportion, that is, a ninety year sentence of imprisonment compared to a State-offered sixty-seven month sentence. The difference between the State-offered plea, which the trial court was prepared to accept, and the sentence imposed is almost eighty-four and a half years. The sentence ultimately imposed is over sixteen times that contemplated in the plea offer. See, e.g., Wilson, 845 So.2d at 158 (reversing vindictive sentence and noting the “extremely large disparity between the offered thirty year sentence and the seventy-five year sentence imposed”[4]); Charles v. State, 816 So.2d 731, 735, 735 n. 3 (Fla. 3d DCA 2002)(re-versing sentence and finding a fifty year sentence with a fifteen year minimum mandatory “significantly greater” than a plea offer of twelve years with no minimum mandatory).
In considering the totality of the circumstances, we find that the defendant has established a presumptive finding of judicial vindictiveness. The record demon *1045 strates sufficient judicial participation in plea negotiations coupled with repeated references to the plea offer as well as the fact that the offer constituted the bottom of the guidelines range. In addition, there is a huge disparity between the plea offer and the sentence imposed. Finally, as discussed below, there is a lack of any facts that would explain the reason for the increased sentence other than that Wilson exercised his right to a probation violation hearing. The totality of the circumstances amply supports a presumptive finding of judicial vindictiveness.

The Presumption of Vindictiveness Was Not Rebutted

Here, the presumption of vindictiveness that arose from the totality of the circumstances, as detailed above, was not adequately rebutted by any objective facts on the record. In fact, there were no additional facts available to the trial court at the time of sentencing that were not known at the time of the plea that would justify an eighty-four and a half year increase in the sentence imposed. The affidavit filed by Wilson’s probation officer indicated that Wilson violated his probation by “failing to live and remain at liberty without violating any law by committing the criminal offense of Exposure of Sexual Organs.... ” Thus, at the time of the plea, the trial court was aware of the nature of the probation violation and could compare this new crime with the crimes for which Wilson was already on probation, as the affidavit indicated that Wilson was on probation for four counts of lewd and lascivious exhibition on a child and Wilson himself explained to the judge the facts that gave rise to the violation. Moreover, the judge presiding at the probation violation hearing was the same judge who placed Wilson on probation in 2001, and modified his probation six months before the instant affidavit of violation of probation was filed. See Cambridge v. State, 884 So.2d 535, 538 (Fla. 2d DCA 2004)(finding an unrebutted presumption of vindictive sentencing where “[t]he record contains no explanation of the grounds for the sentence other than the nature of the crime committed, which generally was known to the court prior to the trial”)
During the probation violation hearing, Wilson’s probation officer testified that Wilson went to trial on the charge of exposure of sexual organs, was convicted, and the conviction was affirmed on appeal. Copies of the judgment, sentence, and affirmation were introduced as exhibits. The testifying probation officer did not go into detail about the trial for the underlying crime or about the evidence that was presented to the Brevard County Court. The victims of the underlying crime did not testify at the probation violation hearing. The only other pertinent evidence that was introduced at the hearing was the fact that prior probation violations were dismissed by the court. See generally Laferta v. State, 837 So.2d 562, 564 (Fla. 3d DCA 2003)(finding sentence of life imprisonment vindictive where the trial judge became an advocate for the plea, indicated that the length of the defendant’s sentence would hinge on the defendant’s procedural choices, was already aware of the defendant’s prior record, and could point to no other additional information to justify the sentence increase).
Similar to Laferta, the trial judge here did not point to any additional facts that were established during the probation violation hearing to justify the imposition of a much harsher sentence. See Wilson, 845 So.2d at 157 (“[A] judge who, having been advised of the details of the case and having been actively involved in an unsuccessful plea bargaining discussion, wishes to impose a post-trial sentence more severe than that contemplated by his or her plea negotiations, would be wise to explain his or her reasons for the greater sentence in *1046 order to dispel any appearance of vindictive sentencing.”); see also Fraley v. State, 426 So.2d 983, 985 (Fla. 3d DCA 1983)(re-quiring that “the reasons for the more severe sentence must affirmatively appear in the record”)(emphasis added).
Instead, the trial judge here concluded that the fact that Wilson committed “the same reprehensible and offensive crime” shows that he is unable to “comport his behavior to laws and take advantage of the grace of the Court [sic] which is what probation is.... ” The judge then applied a “three strikes [and] you are out” analysis; explaining that the first time the defendant committed the crime, he was put on probation, the second time the defendant committed the crime it was twice as bad as the first time because there were four counts, instead of two, and that this was now the third time the defendant had done the same thing. Of course, these three strikes existed minutes earlier when the same judge was preparing to accept the sixty-seven month plea offer.
The dissent emphasizes this “explanation” and finds that it sufficiently rebuts the presumption of vindictiveness. However, nowhere during this explanation does the trial judge point to any evidence first introduced at the time of the probation violation hearing to explain why the defendant was sentenced to ninety years in prison, when, moments earlier, the judge was prepared to accept a sixty-seven month plea. Thus, the trial judge’s explanation is insufficient to overcome the presumption of vindictiveness. See Rodriguez v. State, 917 So.2d 958, 960 (Fla. 3d DCA 2005)(finding that the trial judge failed to overcome the presumption of vindictiveness accompanying a higher sentence after resentencing when the judge relied only on evidence that was known at the time of the initial sentencing).
Moreover, the trial judge’s explanation is negated by the fact that the trial judge actually referred to Wilson’s failure to accept the plea during sentencing. See Brandful v. State, 858 So.2d 367, 369 (Fla. 3d DCA 2003)(finding sentence vindictive where “the trial court mentioned the fact that the defendant had turned down a favorable plea offer” and nothing appeared on the face of the record to explain the harsher sentence). During closing argument, the State suggested a thirty-year sentence. Defense counsel then gave a closing argument, concluding as follows:
Judge, I think that a sentence of thirty years in light of this would be an extremely harsh sentence. I think that prior to taking — prior to hearing testimony in this case, my client was willing to do the bottom of the guidelines, which I think that at maximum this case warrants. My client was hoping to be able to negotiate something under that from the state. I understand the state’s position. They were unable to give us anything less, and my client had never been given anything less and that’s all that it was— and I guess I just think that the Court should not give him anything more than that, okay.
The trial judge responded by asking, “What is it that you think I should give him? CTS [Credit time served]?” In response to defense counsel’s recommendation for a sentence at the bottom of the guidelines, the trial judge responded, “Okay. Well, he chose not to avail himself of that.” This can be nothing other than a comment on Wilson’s procedural choice to have a hearing and, as such, is improper. See Stephney v. State, 564 So.2d 1246, 1247-48 (Fla. 3d DCA 1990)(fínding vindictive the trial judge’s statements “I guess he should have taken it [the original plea offer]. No. It’s not available now.” and “Even more so. The next time he will know to take it when I offer it at arraignment.”)(alteration in orig *1047 inal). While a trial court, in its discretion, may refuse to sentence a defendant at the low end of the guidelines, it may not do so on the basis that the defendant opted not to plead guilty.
Finally, the dissent’s reliance on Bell is misplaced as that case involved a finding that there was no vindictiveness in sentencing where the “reasons” for the significant disparity between the State’s plea offer and the sentence imposed were “clear in the record.” Bell, 847 So.2d at 564. In Bell, we explained that “[a]t the time of the plea discussion, the court had not yet heard the testimony of the victim.” Id. Moreover, after hearing the testimony at trial, the trial court clearly articulated its reasons for the imposed sentence during the sentencing hearing, explaining how the victim had “literally gone through hell” and how the crime (kidnapping) “could have been even worse had the victim not escaped.” Id. at 568-64. These facts were not available to the trial court at the time of the plea offer and more than adequately overcame any finding of vindictiveness. In sharp contrast to Bell, the trial judge here did not identify or mention any fact or evidence first introduced during the probation violation hearing to explain the enormous disparity in sentencing, when, minutes earlier, the judge was prepared to accept a sixty-seven month plea.

Conclusion

Thus, based on the trial judge’s participation in plea negotiations and the glaring disparity between the State-offered plea of sixty-seven months in prison and the ninety year prison sentence imposed, we find that the totality of the circumstances raised a presumption of vindictive sentencing that was not adequately rebutted. As such, the defendant is entitled to a new sentencing hearing before a different judge.
Reversed and remanded with instructions.
WELLS, J., concurs.

. We note that the trial judge proceeded with the violation hearing as though Wilson rejected the plea offer when, in fact, Wilson was willing to accept the plea offer. In the context of a probation violation hearing, a defendant may plead guilty to a violation arising out of a criminal conviction, for which there is ample evidence that the defendant was, in fact, convicted, while maintaining his/her innocence of the crime. See Maselli v. State, 446 So.2d 1079, 1081 (Fla.1984)(affirming and approving Maselli v. State, 425 So.2d 176 (Fla. 2d DCA 1983)).

. In State v. Warner, 762 So.2d 507 (Fla.2000), the Florida Supreme Court discussed a judge’s appropriate role in plea negotiations. The supreme court noted the usefulness of judicial participation in plea negotiations but also recognized that safeguards must be in place to ensure that a defendant’s rights are not violated. Id. at 510-14. After reviewing secondary sources and cases from other states on the topic, the supreme court decided that "judicial involvement must be limited 'to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice.’ ” Id. at 513 (citation omitted). To achieve these ends, the supreme court found that "[t]he trial court must not initiate a plea dialogue; rather, at its discretion, it may (but is not required to) participate in such discussions upon request of a party.” Id. Additionally, the supreme court found that “[t]he judge may state on the record the length of the sentence which, on the basis of information then available to the judge, appears to be appropriate for the charged offense.” Id. at 514. However, "[t]o avoid the potential for coercion, a judge must neither state nor imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant’s right to trial.” Id. Additionally, "[a] record must be made of all plea discussions involving the court.” Id.

. The transcript of the hearing shows that the trial judge inquired at least three times whether Wilson wished to plead guilty to the probation violation.

. These were the facts of Byrd v. State, 794 So.2d 671 (Fla. 5th DCA 2001), a companion case to Wilson v. State, 792 So.2d 601 (Fla. 4th DCA 2001), that was reviewed and decided by the Florida Supreme Court in the same opinion. See Wilson, 845 So.2d at 145 n. 1.