LAGOA, J.
Phillip Davis (“Davis”) appeals his judgment of conviction and sentence. Davis raises several issues on appeal regarding his conviction and sentence. We affirm as to both the conviction and sentence, but write to address the issue of vindictive sentencing raised by Davis. For the reasons set forth below, we find no merit to Davis’s argument and affirm.
*358 I. FACTUAL AND PROCEDURAL HISTORY
Davis was charged with one count each of organized fraud, aggravated white-collar crime, and third-degree grand theft; two counts of second-degree grand theft; and twenty-five counts of money laundering. Prior to the commencement of trial, the trial court inquired about the status of plea negotiations between the State and Davis. The following exchange occurred between the trial court, counsel and Davis:
[STATE]: Judge the State has offered a plea to a single count of aggravated white collar crime, which is count two of the information. First degree felony, level nine open to the Court. The guidelines on that would score out to bottom of 48 month and on top of 30 years.
[DEFENSE COUNSEL]: And Judge, that’s the first I’ve heard of this plea offer.
THE COURT: Okay.
[DEFENSE COUNSEL]: The plea that was given to me before was, basically, an open plea to the Court. There was no discussion or reference by the State to nolle prose [sic] of any particular counts.
THE COURT: All right. Well now you know. Mr. Davis’s plea offer was four years to 30 years with a plea straight up or open to the Court with no promises. All I say to that is, thank you.
[[Image here]]
THE COURT: Okay.... So why don’t you speak to your client[ ] about that plea. I don’t know anything about the case, so I would have to hear extensively from the lawyers before impose [sic] a sentence.
[DEFENSE COUNSEL]: Judge, I—
THE COURT: But they would know that the bottom is four years.
[DEFENSE COUNSEL]: Judge, I can tell you this, at least from my discussions with Mr. Davis, he’s not interested in any pleas that would have the bottom of the guidelines of state imprisonment. We had discussed in generalities based upon what the State had told me before.
THE COURT: All right. So let me just colloquy him on that.
Mr. Davis, raise your right hand, please. (Thereupon, Mr. Phil Davis was duly sworn and testified under oath as follows:)
THE COURT: Okay. You’ve heard the number, you heard the plea. The State’s new plea offer this morning in essence, a guideline plea straight up to the Court with the possibility of a sentence four years to 30 years. Are you interested in pleading guilty within that — knowing that your sentencing would be anywhere between that range?
[THE DEFENDANT]: It could be 30 years.
THE COURT: Okay.
[THE DEFENDANT]: Could be as high as 30 years or as low as four years.
THE COURT: That’s right.
[THE DEFENDANT]: Straight up to the Court. No, ma’am.
THE COURT: Okay.
[[Image here]]
THE COURT: Well, let me ask you this. Would ... you take four? Bottom of the guidelines?
[THE DEFENDANT]: No, Your Hon- or.
THE COURT: All right. Because I consider four right now. Okay. So I don’t know anything about the case, but it is a guideline in the sentence, so all right. Very well.
The trial court then proceeded to try the case. The jury convicted Davis of one count of organized scheme to defraud $50,000 or more, one count of aggravated *359 white-collar crime, two counts of grand theft of more than $20,000 but less than $100,000, and five counts of money laundering. At sentencing, the State recommended to the trial court a sentence of twenty years imprisonment. Davis’s counsel asked that the trial court sentence Davis to probation, not to exceed fifteen years, with one year of community control. After hearing from various family members and other character witnesses who appeared on behalf of Davis and reviewing the pre-sentence investigation reports, the trial court imposed a sentence of twenty years in state prison, followed by ten years of probation, for which restitution was ordered as a special condition in the amount of $82,825.30. This appeal ensued.
II. ANALYSIS
Davis argues that the sentence imposed on him was vindictive. He contends that a presumption of vindictiveness arose in this case because of the trial court’s plea discussion with him, and because of the great disparity between the plea offer and the twenty-year sentence eventually imposed.
The Supreme Court of Florida addressed the issue of judicial plea bargaining and vindictiveness in State v. Warner, 762 So.2d 507 (Fla.2000). In Warner, the court refused to proscribe judicial participation in the plea bargaining process, fashioning instead several restrictions designed to limit judicial involvement so as “to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice.” Id. at 513. To this end, the court stated that trial courts must not initiate plea dialogues. Id. However, they may, at their discretion, participate in such discussions upon the request of a party. Id.
Once involved, Warner states that “the trial court may actively discuss potential sentences and comment on proposed plea agreements!, and] [t]he judge may state on the record the length of sentence which, on the basis of information then available to the judge, appears to be appropriate for the charged offense.” Id. at 514. “The question for the court’s consideration is: ‘Knowing what you know today, what do you think the sentence would be if the defendant pled guilty, as charged?’” Id. To further avoid the potential for coercion, the court also stated that “a judge must neither state nor imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant’s right to trial,” and required that a record be made of all plea discussions involving the court. Id.
The Supreme Court of Florida addressed the issue of vindictiveness again in Wilson v. State, 845 So.2d 142 (Fla.2003). In Wilson, the court stated that Warner did not mandate a presumption of vindictiveness in all cases where a higher sentence was imposed after the judge had participated in the plea discussions. Id. at 152. Rather, the court concluded that “a totality of the circumstances review [was] the more appropriate analysis to employ to determine whether a defendant’s constitutional right to due process of law was violated by the imposition of an increased sentence after unsuccessful plea discussions in which the trial judge participated.” Id. at 156. The court explained that:
Judicial participation in plea negotiations followed by a harsher sentence is one of the circumstances that, along with other factors, should be considered in determining whether there is a “reasonable likelihood” that the harsher sentence was imposed in retaliation for the defendant not pleading guilty and instead exercising his or her right to proceed to trial. The other factors that *360 should be considered include but are not limited to: (1) whether the trial judge initiated the plea discussions with the defendant in violation of Warmer; (2) whether the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (3) the disparity between the plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.
845 So.2d at 156 (internal citations and footnote omitted).
In Bell v. State, 847 So.2d 558 (Fla. 3d DCA 2003), this Coui't concluded that the defendant failed to establish vindictiveness despite a significant disparity between the State’s plea offer and the sentence eventually imposed by the trial court. In Bell, the trial court inquired as to the status of plea negotiations. The State explained that it extended an offer of 364 days in jail followed by four years of probation and 200 hours of community service. The defendant stated that he was unwilling to accept the State’s offer. The trial court then indicated that it would be willing to eliminate the community service hours, but would not otherwise alter the State’s terms. The defendant reiterated that he would not accept the plea. The case proceeded to trial, and after hearing all of the evidence in the ease, including the victim’s testimony, the defendant was sentenced to twenty years.
In rejecting the defendant’s argument that the trial court’s plea discussion and the disparity between the State’s plea offer and the subsequent twenty year sentence established vindictiveness, this Court in Bell stated:
In this case, the State had made a plea offer which was pending. Upon inquiring about the status of the plea negotiation, the defendant explained to the court why he was unwilling to accept the state’s offer. The court then indicated the one modification that it would entertain, the elimination of the community service hours. This was permissible under State v. Warner, 762 So.2d 507, 514 (Fla.2000). The court refrained from becoming an advocate for the State’s plea offer. The court did not imply or state that there would be any future adverse consequences from failure to accept the plea offer. See Wilson v. State, 845 So.2d at 158. Upon the defendant’s rejection of the offer, the court proceeded with the pending matters and preparation for trial.
Id. at 564. Moreover, in Bell the trial court’s remarks at sentencing made clear that the sentence imposed was based upon the evidence presented at trial, in particular “the severe impact on the victim and that this serious crime could have been even worse had the victim not escaped.” Id.
Here, like in Bell, the trial court inquired about the status of the plea negotiation, and defense counsel explained to the trial court why Davis was unwilling to accept the State’s offer, i.e., Davis was unwilling to consider any offer that “would have the bottom of the guidelines of state imprisonment.” The trial court then engaged in a colloquy with Davis in which the judge asked Davis whether he would be willing to accept the State’s plea offer and Davis expressed concern about the potential of being sentenced to thirty years under the guidelines. The trial court then asked Davis whether he would be willing *361 to accept four years, the minimum sentence under the guidelines. See generally Vondervor v. State, 847 So.2d 610, 614 (Fla. 5th DCA 2003) (“Prior to trial, a judge may ask the attorneys if a plea offer has been extended, and may ask the defendant if he is aware of a pending plea offer without violating Warner ’s restrictions.”). The trial court expressed her willingness to consider four years given her knowledge of the case at that point. This is permissible under Warner. See Warner, 762 So.2d at 514 (“The judge may state on the record the length of sentence which, on the basis of information then available to the judge, appears to be appropriate for the charged offense.”).
Furthermore, the trial court did not depart from its role as an impartial arbiter. The trial court did not in any way urge the defendant to accept the plea, or imply or state that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial. Indeed, unlike the trial court in Bell, the trial court here did not even suggest an alternative plea it would entertain. Cf. Charles v. State, 816 So.2d 731, 733-34 (Fla. 3d DCA 2002) (reversing sentence as vindictive where judge made plea offer to defendant, which defendant rejected, and judge made statements on the record indicating that defendant “made the biggest mistake of his life” in rejecting plea offer and “the Court’s disposition of this matter would have been even more lenient if, in fact, [defendant] had acknowledged [ ] responsibility and had entered a guilty plea to the charges”).
While there was a significant disparity between the offer and the sentence eventually imposed by the trial court, the judge made clear the reason for this at the sentencing hearing. At the time of the plea discussion, the trial court had not yet heard any testimony or evidence concerning Davis’s scheme to defraud.[1] See Warner, 762 So.2d at 514 (“A judge’s preliminary evaluation of the case is not binding, since additional facts may emerge prior to sentencing which properly inform the judge’s sentencing discretion.”). The trial court explained at the sentencing hearing that the harsher sentence was based on testimony and evidence adduced at trial which led the court to believe that the scheme at issue was sophisticated in nature, involving great planning and premeditation.[2] Such remarks indicate a valid and permissible explanation for the increase in sentence that is unrelated to Davis’s choice to exercise his right to a trial.
Accordingly, we affirm Davis’s convictions and sentence.
AFFIRMED.
LOGUE, J., concurs.

.
THE COURT: This case — we didn't do a lot of pretrial motions or litigation, so I really didn’t know the scheme or the evidence....

.
THE COURT: ... I paid very close attention to the evidence presented in this case. I took copious notes. I listened to your testimony very carefully, Mr. Davis....
[[Image here]]
I believe that this scheme that you both designed was simple but done with great planning and premeditation, and, therefore, sophisticated. I say that because it entailed forming corporations, bank accounts, enlisting an individual to serve as the president of one manning [sic] corporation, and that takes time and effort....