SCHWARTZ, Senior Judge
(dissenting in part).
In my judgment, the circumstánces of this case, in which the trial court (a) not only participated in the plea negotiations *362 conducted before trial, but itself and on its own motion offered the defendant a bottom-of-the-guidelines four-year sentence if he agreed, as he did not, to plead guilty,[3] and (b) imposed a twenty-year sentence after he was found guilty by the jury, with no satisfactory reason for the discrepancy,[4] *363 present a near-classic case of what the law terms “vindictive sentencing.”[5] See State v. Warner, 762 So.2d 507 (Fla.2000); Wilson v. State, 845 So.2d 142 (Fla.2003); Dominguez v. State, 863 So.2d 407 (Fla. 3d DCA 2003); Wilson v. State, 951 So.2d 1039 (Fla. 3d DCA 2007). The defendant should therefore be resentenced by another judge.
I agree with affirmance of the conviction.

. The pertinent colloquy is as follows:
THE COURT: So 13.8 years, .875 years to 85 years. What plea is offered from the Plaintiff?
MR. TENBROOK (Prosecutor): Judge the State has offered a plea to a single count of aggravated white collar crime, which is count two of the information. First degree felony, level nine open to the Court. The guidelines on that would score out to bottom of 48 month [sic] and on top of 30 years.
MR. BARRAR (Defense Counsel): And Judge, that's the first I’ve heard of this plea offer.
THE COURT: Okay.
MR. BARRAR: The plea that was given to me before was, basically, an open plea to the court. There was no discussion or reference by the State to nolle prose of any particular counts.
THE COURT: All right. Well now you know. Mr. Davis's plea offer was four years to 30 years with a plea straight up or open to the Court with no promises. All I say to that is, thank you. [A]nd then for Ms. Headley?
MR. TENBROOK: Same plea, Your Honor.
THE COURT: Okay. Same numbers, right. So why don't you speak to your clients about that plea. I don't know anything about the case, so I would have to hear extensively from the lawyers before [sic] impose a sentence.
MR. BARRAR: Judge, I—
THE COURT: But they would know that the bottom is four years.
MR. BARRAR: Judge, I can tell you this, at least from my discussions with Mr. Davis, he's not interested in any pleas that would have the bottom of the guidelines of state imprisonment. We had discussed in generalities based upon what the State had told me before.
THE COURT: All right. So let me just colloquy him on that.... Okay. You’ve heard the number, you heard the plea. The State’s new plea offer this morning in essence, a guideline [sic] plea straight up to the Court with the possibility of a sentence four years to 30 years. Are you interested in pleading guilty within that — knowing that your sentencing would be anywhere between that range?
THE DEFENDANT: It could be 30 years.
THE COURT: Okay.
THE DEFENDANT: Could be as high as 30 years or as low as four years.
THE COURT: That’s right.
THE DEFENDANT: Straight up to the Court. No, ma’am.
THE COURT: Okay. Ms. Headley [co-defendant], what about you? ... Are you willing to plead guilty to one count of aggravated white collar crime in exchange for a sentence anywhere from four to 30 years.
THE DEFENDANT: No, ma’am.
THE COURT: Well, let me ask you this. Would either of you take four? Bottom of the guidelines? Ms. Headley?
THE DEFENDANT: I didn’t do anything wrong. Why should I?
THE COURT: Okay. Mr. Davis, would you take four?
THE DEFENDANT: No, Your Honor.
(Supp. R. vol. 1, 24-27) (Emphasis added).

. Notwithstanding its acceptance by the majority, one cannot help but be skeptical of the trial court's indication at sentencing that, when her offer was made prior to trial, she was unaware of the factual circumstances of the case. The appellant is and was a well-known figure in the community, who was a former circuit judge, and whose alleged participation in the present alleged scheme was not only a subject of broad notoriety but exquisitely detailed in the charging documents. In any event, it is hard to understand why the exact circumstances of the crime, an unfortunately not extraordinary embezzlement from a publicly supported agency, could have led to a five-fold increase in the appropriate sentence. That this was not a sufficient reason for the extraordinary departure is demonstrated by the fact that the appellant’s co-defendant, an equal participant in the alleged scheme, was also offered the four-year sentence but was sentenced only to ten years after the verdict.
Even most tellingly, although the trial judge herself said at the beginning of the colloquy that "I don’t know anything about the case, so I would have to hear extensively form the *363 lawyers before [sic] impose a sentence,” the fact is still that she actually made the four-year offer at the end of the proceeding without hearing anything more about the circumstances of the case. It is hard to imagine a more persuasive indication of the fact that the twenty-year sentence was imposed not because of the circumstances revealed by the trial, but by the defendant’s decision to require one.

. I do not suggest that the trial judge was "actually” vindictive in the sense that she was personally out to get Mr. Davis. The pertinent inquiry is not whether this was the case, but whether the law considers, as I would hold it does, the chain of events revealed by the record to amount to "a vindictive sentencing under the law.” See Frazier v. State, 467 So.2d 447, 449 n. 4 (Fla. 3d DCA 1985) ("[T]he expression ‘vindictiveness’ is simply a term of art which expresses the legal effect of a given objective course of action, and does not imply any personal or subjective animosity between the court (or a prosecutor) and the defendant.”). Accord Cambridge v. State, 884 So.2d 535, 537-38 (Fla. 2d DCA 2004); Nairn v. State, 837 So.2d 519, 520 (Fla. 3d DCA 2003); Harris v. State, 845 So.2d 329, 331 (Fla. 2d DCA 2003).